743 P.2d 951

**TANNER COMPANIES,
Plaintiff-Appellee,**

**v.**

**INSURANCE MARKETING SERVICES,
INC., Defendant-Appellant.**

**1 CA–CIV 8949.**

Court of Appeals of Arizona,
Division 1, Department C.

July 2, 1987.

Review Denied Oct. 27, 1987.

cuted an assurance bond on December 5, 1983, and delivered it to Yuma County.

Tanner made the improvements, which were accepted by the Yuma County Board of Supervisors. IMS released the funds it had agreed to lend for the subdivision improvements to the subdivider at his direction. IMS released the funds without requiring proof of Tanner's receipt of payment. The subdivider did not pay Tanner. Tanner did *not* file a lien for the labor and materials furnished.

Tanner filed suit against IMS seeking recovery against the assurance bond as a third-party beneficiary. Tanner also sued the Stouts and Goedeckes as subdivider. They are not parties to this appeal. IMS denied liability, asserting that Tanner was not a third-party beneficiary. After cross-motions for summary judgment, the trial court granted judgment for Tanner for $80,702 plus interest, costs, and attorneys' fees.

The issue on appeal is whether the trial court correctly concluded as a matter of law that Tanner was a third-party beneficiary under the assurance bond. We affirm in favor of Tanner.

A.R.S. § 11–806.01 provides for regulation of residential real estate subdivisions. Subsection (F) of the statute provides that each county board of supervisors shall adopt regulations which "require the posting of performance bonds, assurances or other such security as may be appropriate and necessary to assure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction." To this end, Yuma County Ordinance § 8.13(a) provides:

Tom C. Cole, Yuma, for plaintiff-appellee.

Combs & Stoops by Christopher A. Combs, Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Judge.

In November 1983, Tanner Companies (Tanner) entered into an agreement with Ronald E. Stout and Arne Goedecke that Tanner would provide labor, materials and supplies for street improvements in subdivisions in Yuma County. As required by A.R.S. § 11–806.01(F)[1] and by Yuma County Ordinance § 8.13(a), Insurance Marketing Services (IMS) as lender, and Ronald E. Stout and Shirley Stout as subdivider, exe-

> Bonds, irrevocable letters of credit or other assurances submitted will be reviewed by the County Attorney's Office, who will advise the Public Works Department as to their adequacy. Bonds submitted shall be of a Surety Company authorized to do business in the State of Arizona represented by an agent doing

---

1. This subsection has been redesignated as sub-

section (G). *See* Laws 1986, ch. 264, § 1.

business in the State of Arizona and made payable to Yuma County as follows:

█ A bond or other assurance in an amount equal to one hundred per cent (100%) of the cost of all improvements as estimated by the Developer's Engineer and approved by the Department of Public Works.

█ Bond will be released upon the Subdivider furnishing proof in affidavit form, bearing the authorization of his Surety showing that all claims, liens or other obligations incurred by the subdivider and all of his subcontractors, in connection with the performance of the work, have been properly paid and settled....

█ Lien releases from contractors and subcontractors involved in the construction of off-site improvements will be required prior to the releasing of assurances not submitted by a Surety Company.

IMS argues that an assurance and a bond are separate items. The ordinance indicates that a bond is simply one type of assurance. Further, IMS referred to its security as an assurance bond in its opening brief. It cannot now argue that it did not supply an assurance bond. The bond stated:

To: YUMA COUNTY

For the purpose of providing the assurance of construction required by Yuma County in agreement by and between RONALD E. STOUT and SHIRLEY STOUT, hereinafter referred to as subdivider and INSURANCE MARKETING SERVICES, INC., an Arizona corporation, hereinafter referred to as Lender, represent as follows:

1) That funds sufficient to cover the entire cost of installing subdivision improvements in the subdivision known as MOUNTAIN VISTA ESTATES UNITS 1 and 2, in the amount of $128,481.00 have been committed by Lender and are available to subject divider. The specific items of improvements are:

a) Water System

b) Street Paving

c) Storm Sewer

d) Utility Costs

e) Misc. Improvements

2) Subdivider agrees that funds mentioned in paragraph 1 above shall be used only for the purpose of installing improvements in the above subdivision.

3) All disbursements of said funds by Lender to pay for said subdivision improvements shall be made to subdivider or to contractor or materialman upon direction of subdivider, with the proper presentation of proper invoices and lien waivers and upon receipt from the County Engineer of notice that the construction of said subdivision improvements has been accepted by the County Engineer.

4) It is agreed that an authorized representative of Yuma County, after Board of Supervisors action, may draw on the funds mentioned in Paragraph #1 above in order to complete construction of the subdivision improvements in the above subdivision, if any of the following conditions exist:

a) That in the event the improvements are not completed as evidenced by a lack of work on the improvements for a period of 60 consecutive calendar days.

b) The improvements as constructed, are not acceptable to the Yuma County Engineer, and the developer refuses to make satisfactory corrections after being notified in writing.

c) If the improvements described above are not completed within 180 days from the date of this letter, unless the time for completion of the subdivision improvements is extended by agreement between the subdivider and the County Engineer.

IMS correctly argues that Tanner cannot recover as a third-party beneficiary under Arizona law if it is merely an incidental beneficiary of the bond rather than one for whose express benefit the bond was executed. From the time the question was first raised in *Treadway v. Western Cotton Oil & Ginning Co.*, 40 Ariz. 125, 10 P.2d

371 (1932), the Arizona Supreme Court has held that intent to directly benefit a third party must be indicated in the contract in order for the third party to enforce it. *Norton v. First Fed. Savings,* 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981), held:

> The Arizona rule is that in order for a person to recover as a third-party beneficiary of a contract, an intention to benefit that person must be indicated in the contract itself.... The contemplated benefit must be both intentional and direct, ... and "it must definitely appear that the parties intend to recognize the third party as the primary party in interest."

IMS argues that this case is so similar to *Norton* that the court's ruling in that case, holding that the plaintiffs were not third-party beneficiaries, precludes recovery by Tanner as a third-party beneficiary. In *Norton,* the subdivider had posted a bond to guarantee construction of off-site improvements on subdivision lots as required by a Flagstaff Municipal Ordinance and A.R.S. § 9–463.01(C)(8). The bond pledged $120,000 as security to the City of Flagstaff. A.R.S. § 9–463.01(C)(8) is the counterpart to A.R.S. § 11–806.01(G), the former pertaining to security for assuring installation of off-site improvements for subdivisions within cities, and the latter to security for off-site improvements for subdivisions within counties.

In *Norton,* the plaintiffs-appellants were homeowners in the subdivision who sought damages under the performance bond because the off-site improvements were not completed. Although nothing in the bond demonstrated an intent to directly benefit the plaintiffs, they argued that such an intent was shown in the statute and ordinance which required posting of the bond. Plaintiffs argued that the purpose of the statute and ordinance was to insure that consumers who purchased residential development lots were provided with adequately improved lots. The court acknowledged that where a bond is given in compliance with a statute or ordinance, the statute or ordinance constitutes a part of the bond. In finding that the plaintiffs were not third-party beneficiaries, the court stat-

ed that "there is a vast difference between identifying the broad purpose of an entire statutory scheme and holding that, because of such broad purpose, a benefited group gains rights in contracts to which they are not parties." 128 Ariz. at 179, 624 P.2d at 857. The court further noted that the bond requirement was for the city's protection. The court stated that although the plaintiffs have an interest in having the improvements completed, "in the absence of wording in the statute and/or ordinance to the contrary, it would be unreasonable to conclude that protection of the City of Flagstaff's interests was not the primary purpose of the bond requirement." 128 Ariz. at 180, 624 P.2d at 858.

We find significant differences between *Norton* and this case. The parties seeking recovery as third-party beneficiaries in *Norton* were homeowners in the subdivision, whereas in this case the subcontractor is seeking recovery. In *Norton,* the bond was payable only to the city. Significantly, the funds pledged by the assurance bond in this case are not payable to Yuma County. The bond's language indicates it is pledged not only to protect the county but also to provide the funds to pay for the off-site improvements. Initially, the funds are available only to the county, but once the county gives notice of accepting the subdivision improvements, ¶ 3 of the bond provides that funds will be disbursed to the subdivider, contractor or materialmen upon the subdivider's direction. In this case, the county accepted the improvements, thereby bringing ¶ 3 of the bond into play. At that point, the beneficiaries referred to in ¶ 3 became the primary beneficiaries under the bond. Tanner is a member of this group of primary beneficiaries.

■ We must determine whether under ¶ 3 of the bond, Tanner is merely an incidental beneficiary or is a direct beneficiary. Whether a third-party beneficiary is merely an incidental beneficiary or one for whose express benefit a contract was entered into and, therefore, one who can maintain an action on the contract, is always a question of construction. *Maganas v. Northroup,* 135 Ariz. 573, 575, 663 P.2d 565, 567 (1983);

*Irwin v. Murphey,* 81 Ariz. 148, 153, 302 P.2d 534, 537 (1956). The construction of a contract, where its terms are plain and unambiguous, is a question of law. *Smith v. Melson, Inc.,* 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983). Obviously, Tanner is not mentioned by name in the bond. However, as the Arizona Supreme Court made clear in *Irwin,* a case in which a supplier of labor and materials claimed to be a third-party beneficiary against a mortgagor:

> It would not be necessary in such an agreement to identify a beneficiary. It is sufficient if the agreement clearly showed an intent that Murphey was to pay directly any person who may furnish labor or material in the construction of such dwelling. See Sec. 139 Restatement of Contracts.

81 Ariz. at 153, 302 P.2d at 537.

■ The critical question is whether the bond was to be used directly to pay or guarantee payment to Tanner. In *Seargeant v. Commerce Loan & Inv. Co.,* 77 Ariz. 299, 270 P.2d 1086 (1954), the Arizona Supreme Court noted that the plaintiff is a direct beneficiary if an agreement guarantees payment to him, but is merely an incidental beneficiary if it guarantees payment to a third party who in turn provides payment to that beneficiary. In order to recover against the assurance bond, Tanner must be a primary beneficiary of the bond, as opposed to a secondary beneficiary who benefits only incidentally. If the funds pledged by the bond can be paid by IMS to the subdivider without restriction, then Tanner, which may or may not receive the funds from the subdivider, would be merely an incidental beneficiary.

However, ¶ 3 of the bond allows the funds to be paid to the subdivider, but provides that payment is to be made only upon presentation of proper invoices and lien waivers. IMS argues that the requirement that lien waivers be presented posed no restriction to payment to the subdivider in this case because Tanner had filed no lien and thus there was no lien to waive. IMS also argues that Tanner's only means of collecting payment was to file a mechanics' and materialmen's lien. Tanner, on the

other hand, produced affidavits with its motion for summary judgment indicating that in Yuma County, lien waivers are merely used to indicate that payment has been made. Tanner argues that the reference to lien waivers in ¶ 3 of the bond was a requirement that payment to all laborers and materialmen be shown before the funds could be released to the subdivider.

We agree that Tanner was not required to file a lien, and that Tanner has correctly interpreted the bond and lien waiver requirement. A supplier of labor and/or materials may either seek payment through the use of a mechanics' and materialmen's lien or may pursue other remedies. *United States Fid. & Guar. Co. v. Hirsch,* 94 Ariz. 331, 385 P.2d 211 (1963); *Brown Wholesale Elec. Co. v. Safeco Ins. Co.,* 135 Ariz. 154, 659 P.2d 1299 (App.1982).

■ We find that the term lien waivers is properly construed by reference to Yuma County Ordinance § 8.13. A bond given in compliance with a statute and ordinance incorporates the statute and ordinance within it. *Norton; Employer's Liab. Assur. Corp. v. Lunt,* 82 Ariz. 320, 313 P.2d 393 (1957). Paragraph 2 of the ordinance provides:

> ■ Bond will be released upon the subdivider furnishing proof in affidavit form, bearing the authorization of his surety, showing that all claims, liens or other obligations incurred by the subdivider and all of his subcontractors, in connection with the performance of the work, have been properly paid and settled. . . .

The ordinance requires payment of all claims before the bond will be released. It is not limited to situations in which liens have been filed.

■ Furthermore, from our reading of the ordinance and bond, the terms lien release and lien waiver were used interchangeably to refer to writings evidencing payment to subcontractors. We reach this conclusion because the ordinance requires lien releases to be filed, and the bond, furnished by IMS, which must have advance approval by the Yuma Public Works Department, refers to lien waivers. The Department's approval of the bond demon-

strates that the Department believed the bond complied with the ordinance, and IMS's furnishing the bond shows that it recognized that the terms lien waiver and lien release may be used interchangeably for some purposes.

The ordinance in this case does not expressly authorize payment to laborers and materialmen. However, it does provide that the bond cannot be released until all such claims are paid. The practical effect of the bond and ordinance was to guarantee payment to Tanner after the improvements had been accepted by Yuma County.

In its reply brief, IMS maintains that it is not a surety company and therefore only a lien release, rather than proof of payment, is required pursuant to § 8.13(a) of the Yuma County Ordinance at ¶ 3:

> Lien releases from contractors and subcontractors involved in the construction of off-site improvements will be required prior to the releasing of assurances not submitted by the Surety Company.

Since we have already decided that the parties used the terms lien release and lien waiver interchangeably, this argument is inapt; furthermore, it was not made in the trial court. Arguments not made in the trial court cannot be asserted for the first time on appeal. *Cote v. A.J. Bayless Markets, Inc.*, 128 Ariz. 438, 626 P.2d 602 (App. 1981). Moreover, both parties have referred to the assurance provided in this case as an "assurance bond." Section 8.13(a) provides that bonds shall be submitted by a surety company. We find no evidence in the record that IMS was not a surety company.

For the reasons stated herein, the judgment of the trial court is affirmed. Tanner's request for attorneys' fees on appeal pursuant to A.R.S. § 12–341.01 will be granted after it files its affidavit in compliance with rule 21(c), Arizona Rules of Civil Appellate Procedure.

EUBANK, J., and SCHROEDER, J. Pro Tem., concur.

NOTE: The Honorable MILTON R. SCHROEDER was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 31.