937 P.2d 332

**Gary NAPIER, Plaintiff–Appellant,**

v.

**Daniel BERTRAM, aka Daniel Berthram; Charles Meese; A & N Insurance Services, Inc., an Arizona corporation, Defendants–Appellees.**

No. 1 CA–CV 95–0250.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 24, 1996.

Review Granted May 20, 1997.

Lynn M. Laney, Jr., Phoenix, for Plaintiff–Appellant.

Broening, Oberg, Woods, Wilson & Cass by Neal B. Thomas, Phoenix, for Defendant–Appellee Daniel Bertram.

Stinson & Sever, P.A. by William G. Stinson and Dennis A. Sever, Phoenix, for Defendants–Appellees Charles Meese and A & N Insurance Services, Inc.

## OPINION

THOMPSON, Judge.

Gary Napier appeals from a summary judgment granted in favor of Daniel Bertram and from a judgment on the pleadings granted in favor of Charles Meese and A & N Services, Inc. (A & N). The issue is whether Napier, as a passenger involved in a taxicab accident, has a cause of action against the owner and the lessor of the taxi and the lessor's insurance company and its agent for a failure to procure uninsured motorist (UM) insurance coverage for taxicab passengers. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY [1]

On the evening of May 5, 1992, Napier was riding as a passenger in the back seat of a taxicab leased from Fairway Taxi Co.

Inc. (Fairway) and driven by Lawrence Weathers. The taxi was owned by Bertram personally and leased to Fairway, where Bertram served as president. The taxi was subsequently leased to Weathers from Fairway. The taxi collided with a motor vehicle driven by Jon Bowers, an uninsured motorist. Napier sustained injuries as a result of the accident.[2]

Prior to the accident, Fairway contacted Charles Meese, an agent for A & N, to obtain UM insurance coverage for its taxicabs. Meese contacted St. Louis Fire & Marine Insurance, Inc. (St. Louis) in order to obtain coverage for Fairway. However, following the accident, St. Louis failed to provide coverage for Fairway. The record before us suggests that St. Louis is either insolvent, unable to do business in Arizona, or a fictitious entity altogether.

On May 2, 1994, Napier filed a complaint against Bertram, Meese, and A & N (among others), alleging that those three defendants, as a result of their negligent failure to obtain uninsured motorist insurance coverage for the taxi, were liable to him in tort for financial losses he incurred pursuant to the accident. After oral argument, the trial court granted Bertram's motion for summary judgment and the Meese/A & N motion for judgment on the pleadings, stating that Napier had no cause of action against those defendants. Napier appeals and we have jurisdiction pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 12–2101.

## DISCUSSION

The initial question in a negligence action is whether the law imposes a duty on a

---

1. Statements of facts and inclusion of evidence not part of the record before the trial court but which have been included in appellant's opening brief cannot be considered by this court and are deleted here for the purposes of this decision. *See G.M. Dev. Corp. v. Community Am. Mortgage Corp.*, 165 Ariz. 1, 4, 795 P.2d 827, 830 (App. 1990) (appellate review is limited to record before trial court).

2. Napier's claim to injuries was denied in Bertram's answer and was deemed unknowable in the Meese/A & N answer. However, we view the facts from a grant of summary judgment in the light most favorable to the appellant; further, the extent of Napier's injuries is irrelevant to our

review of the judgment on the pleadings. *See Bishop v. State Dep't of Corrections*, 172 Ariz. 472, 475, 837 P.2d 1207, 1210 (App.1992); *Food for Health Co. v. 3839 Joint Venture*, 129 Ariz. 103, 106, 628 P.2d 986, 989 (App.1981) (a motion for judgment on the pleadings accepts as false all of the moving party's allegations which are denied by the opposing party). We incidently view Bertram's grant of summary judgment more in the nature of a grant of judgment on the pleadings, given that the trial court dismissed the case against Bertram after finding no cause of action in Napier's complaint. *See* Ariz. R. Civ. P. 12(c), 56.

defendant to conform to a certain standard of conduct in order to protect others from unreasonable risk of harm. *Rogers v. Retrum,* 170 Ariz. 399, 400, 825 P.2d 20, 21 (App.1991). Arizona case law has held that an insurance agent owes a duty to his client to exercise the reasonable care, skill, and diligence in procuring insurance coverage which is ordinarily expected of persons in the profession. *Southwest Auto Painting & Body Repair, Inc. v. Binsfeld,* 183 Ariz. 444, 447–48, 904 P.2d 1268, 1271–72 (App.1995); *see also Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984) (in lessor's third-party action for indemnification of its liability to lessee, insurance agent had duty to lessor/insured to exercise degree of care ordinarily expected from others in profession); *Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 302, 603 P.2d 921, 929 (App.1979) (insurer is under a duty to act upon insurance application within a reasonable period of time and the violation of this duty subjects the insurer to liability for negligence). Thus, A & N owed a duty to Fairway to make the attempts the average reasonable insurance broker would make to procure UM coverage on the taxicabs.

■ On appeal, Napier seeks redress from Bertram, A & N, and Meese as a third-party beneficiary of the allegedly negligently unobtained UM coverage. The central issue is whether an insurance company or its agent owes a duty to third parties in procuring insurance for its insured. In *Ferguson v. Cash, Sullivan and Cross Ins. Agency, Inc.,* 171 Ariz. 381, 386, 831 P.2d 380, 385 (App. 1991), we held that, as a matter of law, an insurance agent owes no duty to a third party to recommend insurance to an insured in a particular amount where no insurance is required by law. We are not bound by *Ferguson* here, however, because the cases are factually distinguishable (nonfeasance as opposed to misfeasance), and because the UM coverage Fairway sought from A & N is required by law. As stated in A.R.S. § 28–1233:

A. Every person subject to the requirements of this article shall maintain motor vehicle combined single limit liability insurance as follows:

\* \* \* \* \* \*

2. For the transportation of passengers:

\* \* \* \* \* \*

(c) In a motor vehicle which provides taxicab service, has a seating capacity of less than seven passengers and is not operated on a regular route, minimum coverage in the amount of three hundred thousand dollars and *uninsured motorist coverage* in the amount of at least three hundred thousand dollars.

\* \* \* \* \* \*

B. If a motor vehicle is leased or rented, the lessor shall ensure that the lessee is covered under the lessor's liability insurance as provided by this section or the lessor shall require that the lessee meet the financial responsibility requirements of this section.

(Emphasis supplied.) None of the defendants has denied that the taxi driven by Weathers holds seven passengers or that it is operated on a regular route. Therefore, either Bertram, as owner/lessor to lessee Fairway, or Fairway, as lessor to Weathers or as lessee to Bertram, is required by law to carry UM coverage.

UM coverage is intended to protect insured victims from the negligence of uninsured motorists and "places the victim's insurer in the shoes of the tortfeasor as a source of payment to the victim." *Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 191–92, 731 P.2d 84, 86–87 (1986). The Arizona legislature has continually strengthened the protection available to those injured by negligent drivers with insufficient insurance, and Arizona's UM statutes are intended to provide greater protection than do the statutes of most states. *Id.* at 192, 731 P.2d at 87.

We believe that the benefits of this clear legislative mandate were intended to extend to third parties such as Napier. We therefore find that Napier may seek redress from A & N and/or Meese if Napier can demonstrate that those defendants breached their duty to Fairway in not providing effectual UM coverage. We also find that Napier may

seek redress from Bertram individually, as the taxi owner and primary lessor, if Napier can demonstrate Bertram was negligent in his efforts to obtain UM coverage for his taxi or to ensure that Fairway obtained coverage as his lessee. A.R.S. § 28–1233(B). Although Bertram does not owe a duty to Napier as a direct insurer, he does owe Napier a duty, pursuant to the intent of A.R.S. § 28–1233, to act with reasonable care in conforming to the statutory provisions required of taxi lessors.[3]

Arizona case law does not require a lessor to inspect a policy issued by an insurance company in certain instances. *See Lumbermen's Ins. Co. v. Heiner,* 74 Ariz. 152, 156, 245 P.2d 415, 418 (1952). However, a jury could reasonably conclude that Bertram did not act with reasonable care if he failed to make sure that he or Fairway had physical possession of a taxicab insurance policy or neglected to check the face of the policy for UM coverage.

Relief of this nature is not in conflict with Arizona case law. In *Tanner Companies v. Insurance Marketing Services, Inc.,* 154 Ariz. 442, 743 P.2d 951 (App.1987), this court held that a subcontractor was a proper third-party beneficiary in an action against a surety company after the company negligently released funds to the subcontractor's debtor. We held that whether the subcontractor was an incidental beneficiary or a direct beneficiary entitled to seek third-party relief was always a question of construction and that the subcontractor need not be mentioned by name in the contract between the debtor and the surety. *Id.* at 445–46, 743 P.2d at 954–55. Similarly, in *Nahom v. Blue Cross & Blue Shield of Az., Inc.,* 180 Ariz. 548, 885 P.2d 1113 (App.1994), we found that an insured's husband was entitled to sue his wife's insurance company even though he was not the primary beneficiary under the terms of the contract. *Id.* at 552, 885 P.2d at 1117. Following the test outlined in *Norton v. First Federal Sav.,* 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981), we found that an intention to

benefit the husband was indicated in the contract, that the contemplated benefit was both intentional and direct, and that it definitely appeared that the parties intended to recognize the husband as the primary party in interest. *Nahom* at 552, 885 P.2d at 1117.

Other jurisdictions support our extension of *Southwest Auto Painting & Body Repair, Inc. v. Binsfeld* to tort victims intended to be protected by mandated insurance. In *Werrmann v. Aratusa, Ltd.,* 266 N.J.Super. 471, 630 A.2d 302 (App.Div.1993), the New Jersey Superior Court Appellate Division found that an insurance agent's duty to obtain liability coverage for its insured restaurant extended to a patron injured by the restaurant's negligence where the harm suffered was a reasonably foreseeable result of the agent's negligence and where it would have been "nonsensical, unfair and contrary to the public interest" to preclude the third-party suit. *Id.* at 305.

*Werrmann* relied on the policy set forth in *Eschle v. Eastern Freight Ways, Inc.,* 128 N.J.Super. 299, 319 A.2d 786 (Law Div.1974). In that case, a passenger injured in a motor vehicle accident was permitted to sue the driver's insurance agent because the agent had negligently allowed the driver's policy to lapse. *Id.* at 787–90. The *Eschle* court based its holding in part on the public policy underlying mandatory automobile liability insurance; that is, to see that drivers are insured and to create a fund from which the public may expect "a source of payment beyond the means of the tortfeasors." *Id.* at 787. The court found the agent owed a duty to the general public and that "the potential lack of recompense to a potential injured party is a natural and foreseeable result of an agent's or broker's actions if he negligently fails to obtain proper coverage in accordance with his instructions." *Id.* at 788; *but see Berry v. State Dept. of Health & Human Resources,* 637 So.2d 412 (La.1994) (state's duty to administer health and human resources program under guidelines did not

**3.** This can be seen as an aspect of the general duty of utmost care due a passenger from a common carrier. *Yu v. New York, New Haven & Hartford R.R. Co.,* 145 Conn. 451, 144 A.2d 56 (1958), cited in *Barmat v. John & Jane Doe Partners A–D,* 155 Ariz. 519, 747 P.2d 1218 (1987). This duty includes a responsibility to protect cab patrons from the torts of others. *Jones v. Yellow Cab & Baggage Co.,* 176 Kan. 558, 271 P.2d 249 (1954).

make it liable to third persons when insurance provider failed to furnish liability insurance as required under guidelines); *Clark v. Durbin*, 590 So.2d 633 (La.Ct.App.1991) (an insurance agent's duty to procure insurance for his client does not extend to non-insured tort victim); *Oathout v. Johnson*, 88 A.D.2d 1010, 451 N.Y.S.2d 932 (N.Y.App.Div.1982) (where third-party plaintiff had successfully made a claim against third-party insurance company, taxicab insurance agent who failed to transfer policy to new taxi owed no duty to general public [i.e., the third-party insurance company], even if it was foreseeable that the third-party may be injured by the agent's negligence).

In *Rae v. Air–Speed, Inc.*, 386 Mass. 187, 435 N.E.2d 628 (1982), the Supreme Judicial Court of Massachusetts found that an insurance agent's failure to obtain workers' compensation insurance for an employer constituted negligence and rendered the agent liable to an injured employee and his dependents. Similarly, in *Waddell v. Davis*, 571 S.W.2d 844 (Tenn.Ct.App.1978), the Tennessee Court of Appeals allowed the passenger of an automobile to maintain an action against the owner's insurance agent for negligent failure to obtain uninsured coverage, finding that "where a promise is made to benefit a third-party on the happening of a contingency, the third-party may sue on the contract upon the occurrence of the contingency" even where no contract exists. *Id.* at 848. Lastly, in *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 208 N.E.2d 12 (1965), the Appellate Court of Illinois held that third-party judgment creditors who had recovered against insured had a cause of action against insured's broker for his failure to procure collision insurance. The court found that the fact that the creditors' identity was unknown to the broker at the formation of the insurance contract was not germane to the creditors' status to sue. *Id.* at 20.

Although each of the cases allowing third-party actions involves discrete fact scenarios, we find the policy behind their holdings persuasive and the arguments of their opponents rebuttable. In the instant case, Napier was an intended beneficiary of the UM coverage sought from A & N, the primary purpose of UM coverage being to insure accident victims against uninsured parties. A & N's duty to obtain valid insurance extended to Napier as a foreseeable victim of their potential negligence.

## CONCLUSION

Because of A & N's duty to Napier as Fairway's insurer, the trial court's judgment on the pleadings for Meese and A & N is vacated and this case is remanded as to those defendants to determine whether this duty was breached and, if so, by whom. Bertram, as owner and primary lessor of a taxi required to be insured by statute, also owed a duty to Napier to reasonably inquire into the status of his lessee Fairway's coverage or to reasonably attempt to obtain coverage himself. Therefore, the trial court's summary judgment for Bertram is vacated and this case is remanded to determine whether Bertram breached his duty to Napier.

GERBER, P.J., and VOSS, J., concur.