954 P.2d 1389

Gary NAPIER, Plaintiff–Appellant,

v.

Daniel BERTRAM, aka Daniel Berthram; Charles Meese; A & N Insurance Services, Inc., an Arizona Corporation, Defendants–Appellees.

No. CV–96–0619–PR.

Supreme Court of Arizona,
En Banc.

Feb. 27, 1998.

Lynn M. Laney, Jr., Phoenix, for Gary Napier.

Thomas & Elardo, P.C. by Neal B. Thomas, Phoenix, for Daniel Bertram.

Stinson & Sever, P.A. by William G. Stinson, Dennis A. Sever and Myles P. Hassett, P.C. by Christopher D. Soto, Myles P. Hassett, Phoenix, for Charles Meese and A & N Insurance Services, Inc.

Myles P. Hassett, P.C. by Christopher D. Soto, Myles P. Hassett, Phoenix, for Independent Insurance Agents and Brokers of Arizona, Inc., Amicus Curiae.

## OPINION

FELDMAN, Justice.

¶ 1 We granted review in this case to examine a court of appeals opinion holding that a taxicab passenger who was injured in an accident caused by the negligence of an uninsured motorist could maintain an action against (1) the taxicab's owner/lessor for failure to obtain statutorily mandated uninsured motorist coverage, and (2) the owner's insurance agent for negligent failure to procure that insurance. We have jurisdiction pursuant to A.R.S. § 12–120.24. We view the facts in favor of the party against whom summary judgment and judgment on the pleadings were granted. *Thompson v. Better–Bilt Aluminum Prod. Co., Inc.*, 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992).

## FACTS

¶ 2 On May 5, 1992, Gary Napier was a passenger in a taxicab driven by Lawrence Weathers and owned by Daniel Bertram, president of Fairway Taxi Co., Inc. Bertram leased the cab to Fairway, which subleased it to Weathers. Napier was injured when the taxi collided with a motor vehicle negligently driven by an uninsured motorist.

¶ 3 Before the accident, Fairway contacted Charles Meese, an agent for A & N Insurance Services, Inc., to obtain uninsured motorist insurance coverage for its taxicabs. Meese obtained coverage from St. Louis Fire & Marine Insurance, Inc.[1] After the accident, St. Louis either failed to provide or denied

coverage. The record before us suggests that St. Louis is either insolvent, unable to do business in Arizona, or a fictitious entity altogether.

¶ 4 On May 2, 1994, Napier filed a complaint against Bertram, Meese, and A & N (among others), alleging that because they negligently failed to obtain uninsured motorist coverage for the taxi, they were liable in tort for financial losses Napier incurred as a result of the accident. The trial judge granted Bertram's motion for summary judgment and a motion for judgment on the pleadings filed by Meese and A & N (collectively "Meese"), holding that Napier had *no cause of action*. Napier appealed.

¶ 5 The court of appeals held that Napier's actions against Bertram and Meese should not have been dismissed, basing its analysis of Napier's claims on an amalgamation of third party beneficiary contract and tort negligence principles. *Napier v. Bertram*, 188 Ariz. 410, 937 P.2d 332 (App.1996). Meese and Bertram filed petitions for review.

## DISCUSSION

█ ¶ 6 On appeal and before this court, Napier argues that he may maintain actions under both negligence theories and as a third party beneficiary to the Bertram/Meese contract. Reviewing Napier's complaint and the motion papers filed in the trial court, we find that he failed to allege rights as a third party beneficiary to any contract. Ordinarily, courts should not consider new factual theories raised for the first time on appeal from summary judgment or judgment on the pleadings. *See Schoenfelder v. Arizona Bank,* 165 Ariz. 79, 90 & n. 8, 796 P.2d 881, 892 & n. 8 (1990). In reviewing dismissal of the case, therefore, we only consider whether Napier's claims were supported under the law of negligence, the only theory advanced in the complaint or motion papers.

█ ¶ 7 In his complaint and in both the court of appeals and this court, Napier alleged negligence claims against both Bertram and Meese. All defendants assert es-

---

1. The parties dispute whether Meese actually obtained coverage or referred Bertram to another party. On this record, and for purposes of review of summary judgment and judgment on the pleadings, we assume Meese in fact obtained a policy.

sentially the same response—they owed no legally recognized duty to Napier. The question of duty is therefore the dispositive issue. Whether a duty is recognized "depends on whether the defendant is under any obligation for the benefit of the particular plaintiff." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed.1984). "The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985), *superseded by* A.R.S. § 33–1551. The issue of duty is usually one for the court as a matter of law. *Beach v. City of Phoenix*, 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983).

**A. Does a taxicab owner/lessor have a duty to insure its passenger?**

¶ 8  Bertram owned the taxicab in which Napier was a passenger when injured and does not dispute that he was subject to the motor carrier financial responsibility provisions of A.R.S. §§ 28–1231 to 28–1238.[2] Section 28–1233(A) provided:

Every person subject to the requirements of this article *shall maintain* motor vehicle combined single limit liability insurance as follows:

\* \* \*

2. For the transportation of passengers:

\* \* \*

(c) In a motor vehicle which provides taxi cab service ... minimum coverage in the amount of three hundred thousand dollars and uninsured motorist coverage in the amount of at least three hundred thousand dollars.

Section 28–1233(B) states:

If a motor vehicle is leased or rented, the lessor *shall ensure* that the lessee is covered under the lessor's liability insurance as provided by this section or the lessor shall require that the lessee meet the financial responsibility requirements of this section.

(Emphasis added.)  Given that § 28–1233 applies to Bertram as both owner and lessor of the taxi, the question is whether a passenger such as Napier may maintain a negligence action against Bertram for either failing to acquire and maintain the coverage or failing to ensure that his lessee acquired the requisite insurance.

■ ¶ 9  The legislation is silent on whether a private party may bring a cause of action for failure to obtain the insurance coverage required by § 28–1233. Bertram argues that this legislative silence precludes recognition of a cause of action. We disagree. A statute's silence on whether a cause of action is conferred by the statute or should be recognized as a result of the statute is not dispositive. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 273, 872 P.2d 668, 677 (1994) ("we will not interpret a law to deny, preempt, or abrogate common-law damage actions unless the statute's text or history shows an explicit legislative intent to reach so severe a result. It is, after all, easy enough for the legislature to state that a certain statute does or does not create, preempt, or abrogate a private right of action."). As the RESTATEMENT (SECOND) OF TORTS indicates, the legislature's silence begins, rather than ends, our inquiry.

When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

RESTATEMENT (SECOND) OF TORTS[3] § 874A. Therefore, in determining whether Napier may maintain an action under § 28–1233, we consider "the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *Sellinger v. Freeway Mobile*

---

2.  The financial responsibility statutes have since been amended and now appear at A.R.S. §§ 28–4031 to 28–4037.

3.  Hereafter cited as RESTATEMENT.

*Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974).

¶ 10 Our court of appeals has explained the legislative purpose of the Financial Responsibility Act, of which § 28–1233 is a part.

> The Financial Responsibility Act was enacted in response to social and economic problems arising from the increasing casualty rate on Arizona streets and highways. Its primary purpose is the protection of the traveling public from financial hardship resulting from the operation of motor vehicles by financially irresponsible persons.

*Midland Risk Management Co. v. Watford,* 179 Ariz. 168, 171–72, 876 P.2d 1203, 1206–07 (App.1994) (citations omitted). Section 28–1233 appears in Article 7 of the Act, entitled "Motor Carrier Financial Responsibility," and is specifically directed at owners and lessors of commercial vehicles "as a means of providing some degree of financial protection for potential accident victims." *Schwab v. State Farm Fire & Cas. Co.*, 27 Ariz.App. 747, 749, 558 P.2d 942, 944 (1976).

¶ 11 Taxicab passengers are, of course, part of the public protected by the Act. However, the section applicable to taxicabs provides for even greater protection for such passengers than for ordinary motorists by requiring that taxicab owners and lessors carry both liability and uninsured motorist ("UM") coverage.[4] Moreover, § 28–1233 requires more coverage than the statutory minimum for personal policies.[5] Thus § 28–1233

evidences a legislative intent to both require UM coverage for taxi passengers and ensure greater protection ($300,000) than the minimum available to ordinary motorists.

¶ 12 Although § 28–1233 requires that a cab owner and lessor have and ensure such coverage, the statute does not accomplish these ends on its own. The only enforcement provision is found in § 28–1237, which imposes class 1 and class 3 misdemeanor criminal sanctions for violations of § 28–1233.[6] We do not think the legislature intended to limit enforcement of § 28–1233 to these criminal sanctions, however, because imposing criminal penalties does nothing to protect a passenger against a financially irresponsible uninsured motorist. If enforcement of § 28–1233 were limited to the misdemeanor sanctions provided in § 28–1237, the legislative purpose of protecting a taxicab passenger from an uninsured motorist would be unfulfilled. Even if an owner's failure to procure insurance were occasionally punished by jail time rather than probation, it is unlikely that the passenger's medical expenses would be satisfied or compensation provided by the taxi owner's incarceration after the accident.[7] And while restitution is possible,[8] the legislature has expressly provided for separate civil actions seeking damages in excess of the amount of restitution ordered. *See* § 13–807 ("An order of restitution in favor of a person does not preclude that person from bringing a separate civil action

---

4. Persons obtaining personal insurance policies are not required to have UM coverage. The applicable statute only required that persons seeking liability coverage also be offered UM coverage. *See* § 20–259.01, as amended in 1993.

5. Personal policies are required to provide $15,000 in liability coverage for one person and $30,000 per accident. *See* § 28–1170(B)(2)(c). Pursuant to § 28–1233, taxicabs are required to carry $300,000 in UM coverage.

6. Failure to comply with the financial responsibility requirements is a misdemeanor offense. Section 28–1237 provides:
   A. Any person subject to the financial responsibility requirements of this article who operates or causes to be operated vehicles in this state without meeting the financial responsibility requirements of this article is guilty of a class 3 misdemeanor.
   B. Any person subject to the financial responsibility requirements of this article who operates or causes to be operated vehicles in

this state without meeting the financial responsibility requirements of this article if the vehicle is involved in an accident in this state is guilty of a class 1 misdemeanor.

7. A class 1 misdemeanor is punishable by up to six months' imprisonment or three years' probation; a class 3 misdemeanor is punishable by up to thirty days' imprisonment or one year's probation. *See* §§ 13–707 and 13–902.

8. Restitution ordered as an adjunct to criminal proceedings is at best a tenuous remedy, entirely removed from the control of the victim. It is within the prosecutor's discretion in the first place whether to proceed with criminal charges, and the decision to award restitution upon conviction, as well as the determination of the amount and manner of payment, remains within the sole discretion of the court. *See* A.R.S. § 13–804.

and proving in that action damages in excess of the amount of the restitution order.").

¶ 13   Given the legislature's goals in enacting § 28–1233, the best and perhaps only effective way to attain those goals is to permit a passenger to bring a negligence action for the owner's failure to comply with the statutory mandate.   Such tort liability will provide ample incentive to a taxi owner to acquire the mandatory coverage.   In sum, we conclude that permitting a tort remedy against a common carrier for violating § 28–1233 is "consistent with the legislative provision, appropriate for promoting its policy and needed to assure its effectiveness." [9]   RESTATEMENT § 874A, cmt f.

## B.  Does the insurance agent owe a duty to non-client passengers of a common carrier?

¶ 14   To date, Arizona law has recognized an insurance agent's duty to only the client.   Napier's claim against Meese requires us to examine whether an agent's duty may extend to a non-client passenger.   We have recognized elsewhere that standards "for professional conduct and legal culpability for failure to maintain those standards are not universal among the professions.   This Court will confront each case as it comes before us." *Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 188, 677 P.2d 1292, 1296 (1984).

¶ 15   To be liable for negligence, however, the agent must owe a legal duty to the plaintiff.   *See Markowitz,* 146 Ariz. 352, 706 P.2d 364.   The general rule is that a professional owes no duty to a non-client unless special circumstances require otherwise.   Under special circumstances our courts have imposed liability on a professional to the extent that a foreseeable and specific third party is injured by the professional's actions.   *See, e.g., Donnelly Const.,* 139 Ariz. at 187, 677 P.2d at 1295 (contractor could bring negligence action against owner's architect when error in plans increased contractor's costs); *Hamman v. County of Maricopa,* 161 Ariz. 58, 63–64, 775 P.2d 1122,

1127–28 (1989) (psychiatrist has duty to exercise reasonable care to protect foreseeable victim of patient), *superseded by* A.R.S. § 36–517.02; *Mur–Ray Management Corp. v. Founders Title Co.,* 169 Ariz. 417, 422–23, 819 P.2d 1003, 1008–09 (App.1991) (imposing a duty of reasonable care regarding escrow agent's representations to third persons).

¶ 16   These cases recognize a professional's duties to a non-client in factually distinct circumstances, premised on distinct legal theories.   Yet a common thread exists between them.   In each case, there was a foreseeable risk of harm to a foreseeable non-client whose protection depended on the actor's conduct.   In *Donnelly Construction,* the contractor was hired and contractually bound to follow the architect's plans.   Thus, despite the contractor's faultless performance, incorrect plans necessarily caused extra expense. 139 Ariz. at 187, 677 P.2d at 1295.   In this sense, the contractor was in the care of the architect.   In *Hamman,* the psychiatrist's duty toward his patient's potential victim was based on the special circumstances that placed "a more 'sufficiently targeted' victim" than a mere random member of the community in a zone of danger that was uniquely foreseeable to the psychiatrist.   161 Ariz. at 63, 775 P.2d at 1127 (quoting *Jablonski by Pahls v. United States,* · 712 F.2d 391 (9th Cir.1983), *overruled on other grounds by In re McLinn,* 739 F.2d 1395 (9th Cir.1984)).   In *Mur–Ray Management,* liability for negligent misrepresentation existed only because the provider of information knew the information would be relied upon by a limited group of persons for whose benefit the information was supplied.   169 Ariz. at 422–23, 819 P.2d at 1008–09 (citing and quoting RESTATEMENT § 552).   Thus each case involved some distinct factor that enhanced the relationship between the professional and the non-client so that the non-client was in some way dependent upon the professional.   Therefore, these cases recognized a duty of care when a special relationship between the

---

9.   Arizona has long recognized that common carriers of passengers must exercise the highest degree of care and prudence to protect their passengers.   *E.g., Southern Pac. Co. v. Hogan,* 13 Ariz. 34, 108 P. 240 (1910).   This standard of care, however, has always been stated in terms of

protection against *physical harm* to the passengers.   *See* RESTATEMENT § 314A(1)(a).   While the strong public policy governing common carriers fortifies our decision, our holding does not extend the standard of care required of common carriers beyond its traditional scope.

non-client and professional exceeded mere general foreseeability.

¶ 17   Meese argues that under *Ferguson v. Cash, Sullivan & Cross Ins. Agency,* there is no such special relationship creating a duty of care between an insurance agent and non-clients. *Ferguson* held, however, "that an agent owes no duty to a third party to *recommend* insurance to the insured in a particular amount *where no insurance is required by law.*" 171 Ariz. 381, 386, 831 P.2d 380, 385 (App.1991) (emphasis added). The discretionary nature of the insurance at issue in *Ferguson* is one factor that distinguishes that case from the one at bar.

¶ 18   The *Ferguson* court based its holding on the fact that "while ... potential claimants are entities that may be considered in negotiations between an agent and an insured, we believe the mere existence of those entities does not generate a special relationship with the agent." *Id.* That reasoning makes good sense in the context of discretionary insurance because the client may make choices about the existence, level, and scope of desired coverage based on an infinite number of potential risks and considerations, and the relationship between the agent and a non-client is therefore attenuated by the client's decisions. Thus *Ferguson* recognized that the client's choice of what risks ought to be insured against should not expand the agent's liability for negligence to the extent that the agent becomes liable to an infinite number of foreseeable but unknown possible victims. That same reasoning, however, does not apply in the context of mandatory insurance. In this case, the legislature has made the choice on behalf of every client. As a professional, the agent is charged with knowledge of that legislative determination.

¶ 19   Arguably, *Ferguson* is also distinguished because the required UM coverage in this case was adopted exclusively for the benefit of passengers—not the client/cab owner or lessor. The named insured in UM coverage issued to a taxicab owner or lessor receives no protection from such coverage— only passengers are protected. In this respect the situation is similar in principle to *Fickett v. Superior Court of Pima County,* in which our court of appeals held that a guardian's attorney was liable to the non-client ward because the primary basis for the attorney-guardian/client relationship was to help the guardian fulfill his legal duties to the ward. 27 Ariz.App. 793, 794–95, 558 P.2d 988, 989–90 (1976). In the case at bar, as in *Fickett,* the professional's duties to the client are discharged for the benefit of the non-client. As the court of appeals stated, the

> determination of whether, in a specific case, the attorney will be held liable to a third person not in privity *is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff,* the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* (emphasis added).

¶ 20   Other states have held insurance agents liable to non-clients, applying a species of third party beneficiary/tort theory based on the conclusion that the statutorily mandated coverage was intended to benefit the victim.[10]   Much that we said in recognizing a duty in the relationship between cab owner/lessor and passenger could be said with respect to recognition of a duty to all passengers. But much of the same argument could also apply to situations in which an agent fails to procure mandatory liability coverage for an automobile owner who negligently injures a passenger, another driver, or a pedestrian. *See* §§ 28–4135, 28–4009, mandating liability coverage. Recognition of such a broad duty would, as a matter of

---

10.   *See, e.g., Nowlon v. Koram Ins. Center, Inc.,* 1 Cal.App.4th 1437, 2 Cal.Rptr.2d 683 (1991); *Gothberg v. Nemerovski,* 58 Ill.App.2d 372, 208 N.E.2d 12 (1965); *Flattery v. Gregory,* 397 Mass. 143, 489 N.E.2d 1257 (1986); *Werrmann v. Aratusa, Ltd.,* 266 N.J.Super. 471, 630 A.2d 302 (1993); *Eschle v. Eastern Freight Ways, Inc.,* 128 N.J.Super. 299, 319 A.2d 786 (1974); *Waddell v. Davis,* 571 S.W.2d 844 (Tenn.App.1978); *Mercado v. Mitchell,* 83 Wis.2d 17, 264 N.W.2d 532 (1978); *but see Guillory v. Morein,* 468 So.2d 1254 (La.App.1985); *Oathout v. Johnson,* 88 A.D.2d 1010, 451 N.Y.S.2d 932 (1982).

policy, work a fundamental change in our law. *See Fickett,* 27 Ariz.App. at 794–95, 558 P.2d at 989–90. It would impose on agents a duty to a vast number of non-clients—literally all who reside in or travel in this state. This would be a much broader rule than that adopted in previous cases dealing with the duty of a professional to a non-client. *Cf. Hamman,* 161 Ariz. at 63, 775 P.2d at 1127 (finding a special circumstance in that the potential victims were more than random members of the community). Finally, we must note that all of us are able to protect ourselves against the danger in question by purchasing our own UM coverage.

█ ¶ 21 Balancing the arguments for and against, we believe that recognizing such a duty would prove too disruptive to the established expectations of the insurance industry. We conclude, for the present at least, that recognition of such a broad duty is better left to legislative action rather than judicial decision-making. Moreover, we note that our decision not to recognize an insurance agent's duty to a non-client in the present context has no effect on the insurance agent's existing duty owed to the client. Thus the taxi owner may continue to look to the insurance agent or company to the extent that its negligence resulted in loss to the owner or lessor. *See* § 12–2501.

## CONCLUSION

█ ¶ 22 We hold that a taxicab passenger may maintain an action in negligence against a person responsible for acquiring or ensuring the acquisition of insurance coverage as provided in § 28–1233, and that a violation of § 28–1233 is a breach of a statutory duty. We also hold that an insurance agent does not owe a non-client a duty in these circumstances. We vacate the court of appeals' opinion and reverse the trial court's grant of summary judgment to Bertram. We remand Napier's claims against Bertram to the trial court for proceedings in accord with this opinion. We affirm the trial court's grant of judgment on the pleadings in favor of Meese and A & N.

ZLAKET, C.J., JONES, V.C.J., and MARTONE and JAMES MOELLER (Retired), JJ., concur.