3 P.3d 961

**Steven DRUCKER, a single man; Naser Parsa, a single man, Plaintiffs–Appellees, Cross Appellants,**

v.

**GREATER PHOENIX TRANSPORTA-TION CO., INC., d/b/a Yellow Cab of Phoenix and Mesa Dial–a–Ride; Continental American Insurance Company, a foreign corporation, Defendants–Appellants, Cross Appellees.**

**No. 1 CA–CV 98–0502.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 26, 1999.

Review Denied May 23, 2000.

Van O'Steen and Partners by Stephen I. Leshner and Law Firm of Timothy J. Tweeton by Timothy J. Tweeton, Phoenix, for Plaintiffs–Appellees.

Greer & Alles, PLC by Scott A. Alles, Robert L. Greer, Mesa, for Defendant–Appellant Greater Phoenix Transportation Co., Inc.

Thomas & Elardo, P.C. by John A. Elardo, Neal B. Thomas, Phoenix, for Defendant–Appellant Continental American Ins.

## OPINION

PATTERSON, Judge.

¶ 1 In this matter, we determine that Arizona's Motor Carrier Financial Responsibility laws[1] require uninsured motorist (UM) coverage in a specific amount for passenger transport vehicles for hire such as taxicabs. We find that it is the intent of the statute that the drivers of these vehicles receive this coverage, in addition to the passengers they are transporting, and that a policy endorsement excluding drivers from uninsured motorist coverage violates public policy and cannot be given effect.

### FACTS AND PROCEDURAL HISTORY

¶ 2 On December 15, 1993, taxicab driver Naser Parsa was seriously injured by an uninsured negligent motorist while driving a taxicab owned by Greater Phoenix Transportation Co., Inc. (GPTC). Although GPTC did not employ him, Parsa was leasing the taxicab from GPTC.

¶ 3 At the time of Parsa's accident, GPTC maintained an insurance policy with Continental American Insurance Company (Continental), which provided UM coverage in the amount of $300,000 on the taxicabs. The policy contained an added endorsement purporting to exclude UM and underinsured motorist (UIM) coverage for the drivers of the taxis, which provided as follows:

> It is understood and agreed that uninsured/underinsured motorist coverage does not apply to the driver of any vehicle scheduled on the above policy, regardless of whether or not the driver is an employee or an independent contractor.

Purportedly, GPTC required its drivers to sign documents with provisions advising them that if they desired UM and UIM coverage, they were to obtain it on their own, but no copy of such an agreement signed by Parsa was produced.

¶ 4 Because Parsa's injuries were caused by an uninsured motorist, he sought to recover UM benefits from GPTC and its insurer, Continental. However, his claims were rejected.

¶ 5 On July 16, 1996, Parsa, jointly with Plaintiff–Appellee, Steven Drucker, filed a declaratory judgment action, with Drucker suing GPTC and Parsa suing both GPTC and Continental. In addition to requesting rulings that they were entitled to coverage for their damages, both Drucker and Parsa also alleged claims for bad faith and punitive damages.

¶ 6 The court granted Parsa summary judgment against both GPTC and Continental on the issue of their obligation to provide UM coverage up to the statutory limit of $300,000, to cover damages Parsa may be found to have sustained. As for Parsa's bad faith and punitive damages claims, the trial court granted summary judgment in favor of GPTC and Continental. Because some issues were still undecided, the court included language of finality pursuant to Rule 54(b) of the Arizona Rules of Civil Procedure to allow immediate appeal.

¶ 7 Both Continental and GPTC appeal from the Parsa judgment, arguing error in the trial court's determination of the coverage issue. For the reasons that follow, we affirm the trial court's determination of coverage.[2]

## DISCUSSION

¶ 8 This appeal puts squarely into issue whether A.R.S. section 28–4033(A)(2) re-

---

1. At all times relevant to this matter, Arizona's Motor Carrier Financial Responsibility laws, Arizona Revised Statutes Annotated (A.R.S.) sections 28–1231 through 28–1238, were contained in Title 28, entitled "Uniform Motor Vehicle Safety Responsibility Act." *See* A.R.S. §§ 28–1231 through 28–1238 (1997). The legislature completely revamped Title 28 in 1995, effective as of October 1, 1997. *See* Act effective Oct. 1, 1997, ch. 132, 1995 Ariz. Laws 1, 3 (amended by ch. 76, 1996 Ariz. Laws 168–69, 306). Most of the provisions of the Uniform Motor Vehicle

Safety Responsibility Act are now part of Title 28 entitled "Vehicle Insurance and Financial Responsibility," including the Motor Carrier Financial Responsibility laws, which survive largely in their same form, but which are now numbered A.R.S. sections 28–4031 through 28–4037 (1998).

2. We resolve all other issues, including the cross-appeal issues and the issues concerning Appellee Steven Drucker, in a contemporaneous memorandum decision. *See* Ariz. R. Civ.App. P. 28(g).

quires UM coverage for all occupants of passenger-carrying vehicles used to transport passengers for hire or whether the drivers of these vehicles are excluded. This is an issue of statutory interpretation, and we therefore review the trial court's ruling *de novo*. *Hawkins v. State*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App.1995).

¶ 9 As this court noted in *McCandless v. United Southern Assurance Co.*, 191 Ariz. 167, 170, 953 P.2d 911, 914 (App.1997), the statutes providing for "Motor Carrier Financial Responsibility" are "specifically directed to persons operating particular types of large vehicles [used] for commercial purposes." One of the three groupings of commercial vehicles addressed in these statutes consists of "passenger-carrying motor vehicle[s] ... used to transport passengers for hire." A.R.S. § 28–4032(B). Pursuant to section 28–4032(B), "[a] person who operates a passenger-carrying motor vehicle, bus or van used to transport passengers for hire, other than a car pool operator, shall comply with the financial responsibility requirements of this article." The specific requirements to be met are set forth in A.R.S. section 28–4033, which provides in relevant part:

A. A person subject to the requirements of this article shall maintain motor vehicle combined single limit liability insurance as follows:

....

2. For the transportation of passengers:

(a) In a vehicle with a seating capacity of sixteen passengers or more, minimum coverage in the amount of five million dollars and uninsured motorist coverage in the amount of at least three hundred thousand dollars.

(b) In a vehicle with a seating capacity of less than sixteen passengers, minimum coverage in the amount of seven hundred fifty thousand dollars and uninsured motorist coverage in the amount of at least three hundred thousand dollars.

(c) In a motor vehicle that provides taxicab service, has a seating capacity of less than seven passengers and is not operated on a regular route, mini-

mum coverage in the amount of three hundred thousand dollars and uninsured motorist coverage in the amount of at least three hundred thousand dollars.

¶ 10 In the recent case of *Napier v. Bertram*, 191 Ariz. 238, 241 ¶ 11, 954 P.2d 1389, 1392 ¶ 11 (1998), our supreme court observed that A.R.S. section 28–1233, now codified at A.R.S. section 28–4033, "evidences a legislative intent to both require UM coverage for taxi passengers and ensure greater protection ($300,000) than the minimum available to ordinary motorists." Taking this language out of context, one might conclude that the court decided that only taxi passengers and not taxi drivers must be given UM coverage. However, the court was not presented with the issue of whether UM coverage would have been applicable to taxi drivers. Rather, *Napier* was a case in which a taxi passenger was bringing suit against the taxi owner for negligence in failing to acquire the UM coverage mandated by statute. *Id.* at ¶ 4, 954 P.2d at ¶ 4. Therefore, the *Napier* holding simply does not speak to the particular issue that is raised in this case—whether the legislature intended that drivers, in addition to passengers, have the benefit of UM coverage. This issue, then, is one of first impression for this court.

¶ 11 "The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind the statute." *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). "The language of a statute is the most reliable evidence of its intent." *Walker v. City of Scottsdale*, 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App. 1989). When legislative intent cannot be determined from the exact language of a particular statute, we must consider other things such as context, subject matter, the statute's effect and consequences, reason, and the spirit and purpose of the law. *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 594, 826 P.2d 1217, 1220 (App.1991); *Humana Hosp. Desert Valley v. Superior Ct.*, 154 Ariz. 396, 402, 742 P.2d 1382, 1388 (App.1987).

¶ 12 In this instance, the relevant language of section 28–4033(A)(2) itself does not

answer the question of whether UM coverage is intended for all occupants or only the passengers of a taxicab to the exclusion of the driver. Either interpretation is possible from the language of the statute. One thing is clear, however: the legislature could have expressly excluded drivers from coverage, and it did not do so.

¶ 13 Additionally, when reading this language in context with the statutory subsection as a whole and with portions of section 28–4032, we discern a statutory scheme to establish insurance requirements for three classes of vehicles—vehicles of a particularly heavy weight class that transport nonhazardous property, vehicles that transport hazardous substances, and vehicles that carry passengers for hire. Therefore, it appears that UM coverage for passenger-carrying vehicles attaches to the *vehicles,* just as liability insurance for all three types of vehicles attaches to the vehicles. If so, UM coverage for passenger-carrying vehicles would protect anyone in the vehicle, including the driver. To the extent that this interpretation conflicts with A.R.S. section 20–259.01 (Supp. 1998), which makes uninsured coverage for insureds optional, and in light of longstanding public policy to protect victims from financially irresponsible drivers, we liberally construe section 28–4033(A)(2) to include drivers within the protected class of victims. *See, e.g., Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 104, 859 P.2d 724, 727 (1993) (recognizing that UM/UIM statute "is remedial in nature and should be liberally construed"); *Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 114, 765 P.2d 513, 516 (1988) (finding purported exclusion contrary to the "legislative policy to guarantee all insureds protection against uninsured motorists"); *Transportation Ins. Co. v. Martinez,* 183 Ariz. 33, 35, 899 P.2d 194, 196 (App.1995) (acknowledging the liberal construction of section 20–259.01 to carry out the intent of the legislature).

¶ 14 GPTC and Continental point out that section 28–4033(A) does not require UM coverage for drivers of trucks carrying hazardous or nonhazardous material. They then argue that it would be incongruous for the legislature to require UM coverage for drivers of passenger-carrying vehicles as no logical reason exists for distinguishing between the types of drivers. They conclude that this shows the legislature did not intend for mandatory UM coverage to apply to drivers of passenger-carrying vehicles.

■ ¶ 15 We think it more likely, however, that the legislature applied its attention to passenger-carrying vehicles as requiring UM coverage because of the large numbers of people they carry. To exclude drivers from the benefit of such coverage would muddle the spirit and purpose of the UM laws. "[W]here there is no contrary textual or legislative expression of intent on a particular application," we concern ourselves with the spirit and purpose of the law. *Tracy v. Superior Ct.,* 168 Ariz. 23, 31, 810 P.2d 1030, 1038 (1991). The purpose of the financial responsibility laws is "the protection of the travelling public from financial hardship resulting from the operation of motor vehicles by financially irresponsible persons." *Midland Risk Management Co. v. Watford,* 179 Ariz. 168, 172, 876 P.2d 1203, 1207 (App. 1994). As such, these types of laws are remedial in nature and should be liberally construed to carry out the intent of the legislature. *Calvert,* 144 Ariz. at 294, 697 P.2d at 687. Our holding today is in concert with that purpose.

¶ 16 For the above reasons, we hold that UM coverage, mandated by A.R.S. section 28–4033(A)(2), protects all occupants of vehicles carrying passengers for hire, including the drivers of the vehicles.

■ ¶ 17 Next, we consider an argument made by Continental that, if coverage is required for Parsa by this statute, GPTC alone should be held liable. Continental points out that nothing contained in A.R.S. section 28–4033 itself requires an insurance company to do anything about supplying coverage. Instead, the statute expressly places the responsibility upon the owners or operators of the commercial passenger-carrying vehicles to see that proper coverage is provided. It argues, therefore, that no reason exists that the exclusion it agreed to with GPTC should not be given effect as to it and that the sole party to be found liable would be GPTC.

¶ 18 We disagree with Continental's contention. As we noted in *McCandless,* the legislature also established, as part of the Motor Carrier Financial Responsibility laws, "a certification process by which the Arizona authorities could be certain that appropriate insurance coverage exist[s] before granting permission to operate in this state." 191 Ariz. at 171, 953 P.2d at 915. Pursuant to A.R.S. section 28–4034, formerly A.R.S. section 28–1234, the Arizona Department of Transportation is empowered to require that each person wishing to own, maintain or operate any of the vehicles covered by these laws in Arizona certify to the agency that appropriate insurance coverage exists. The statute provides that the agency may also confirm the existence of coverage with the insurance company.

¶ 19 In *McCandless,* the relevant insurance policy obtained by a trucking company contained a scheduled vehicle limitation that we found to be ineffective to defeat coverage. We held that the only way to give effect to the legislative purpose underlying these laws, that of providing a source of compensation for injured motorists, was to conclude that when a policy is certified to the agency pursuant to statute and permission to operate in Arizona is thereby obtained, the policy is deemed amended by operation of law to cover any vehicle owned and operated in Arizona by the insured and meeting the statutory criterion. 191 Ariz. at 171, 953 P.2d at 915.

¶ 20 Similarly, we hold in this case that since A.R.S. section 28–4033(A)(2) requires UM coverage for taxi drivers, an endorsement excluding coverage to the drivers cannot be given effect. Regardless of whether Continental was contacted by the agency to confirm the coverage certified by GPTC, a company in the business of supplying insurance for commercial vehicles cannot claim that it does not know its policy may be used by the insured to obtain permission to operate in this state. The policy Continental provided to GPTC is deemed amended by operation of A.R.S. section 28–4034(B) to provide the coverage mandated by A.R.S. section 28–4033(A)(2).

## CONCLUSION

¶ 21 Arizona's Motor Carrier Financial Responsibility laws require UM coverage for drivers as well as passengers of passenger transport vehicles for hire. Any insurance policy endorsement excluding drivers from UM coverage is void. The trial court properly granted summary judgment to Parsa on the UM coverage issue, and we therefore affirm.

CONCURRING: NOEL FIDEL, Judge, and JAMES B. SULT, Judge.