SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| D. JERE' WEBB, through assignment granted by Gail Susan Berliant and Neal Berliant (dba The Liquor Vault, Inc. and Berliant, LLC), | ) Arizona Supreme Court<br>) No. CV-07-0127-PR<br>)<br>) Court of Appeals<br>) Division One<br>) No. 1 CA-CV 06-0300<br>) |
| Plaintiff-Appellant, | )<br>) Maricopa County |
| v. | ) Superior Court<br>) No. CV2005-093597 |
| VICTORIA GITTLEN; G&G INSURANCE SERVICE, INC., an Arizona corporation; CDS INSURANCE AGENCY LLC, a limited liability company doing business in Arizona, | )<br>)<br>)<br>) **O P I N I O N**<br>)<br>) |
| Defendants-Appellees. | )<br>) |

Appeal from the Superior Court in Maricopa County
The Honorable Helene F. Abrams, Judge

**REVERSED AND REMANDED**

_____

Memorandum Decision of the Court of Appeals, Division One
Filed Mar. 8, 2007

**REVERSED**

_____

MATTHEW L. RIGGS, P.C.                                        Mesa
     By   Matthew L. Riggs
Attorney for D. Jere' Webb

LEWIS, BRISBOIS, BISGAARD & SMITH, L.L.P.                   Phoenix
     By   Greg S. Como
          Rob A. Justman
Attorneys for Victoria Gittlen, G&G Insurance
Service Inc., and CDS Insurance Agency, L.L.C.

THE HASSETT LAW FIRM, P.L.C.                                    Phoenix
      By    Myles P. Hassett
            Lucas N. Frank
Attorneys for Amicus Curiae Independent Insurance Agents
and Brokers of Arizona
_____

**B A L E S**, Justice

¶ 1     Under Arizona law, an insurance agent's clients may assert claims for professional negligence against the agent.  We hold that clients may assign such claims to third parties.

## I.

¶ 2     In 2000, Neal and Gail Berliant bought a liquor store called The Liquor Vault.  To insure themselves, they purchased a business and umbrella liability policy from Victoria Gittlen, a licensed insurance agent.  Gittlen then worked for G&G Insurance Service; she later moved to CDS Insurance Agency.  The Berliants allege that Gittlen did not advise them that they could also purchase liquor liability coverage.

¶ 3     In 2001, The Liquor Vault sold beer to a minor who gave it to another.  The second youth drove his car into a cement barrier, killing his passenger.  The passenger's father, D. Jere' Webb, filed a wrongful death claim against the Berliants and The Liquor Vault.  The Berliants tendered the claim to their insurance company, which refused to defend because the Berliants lacked liquor liability coverage.

¶ 4        To settle the wrongful death claim, the Berliants stipulated to the entry of a $3 million judgment; Webb agreed not to execute on the judgment and, in exchange, the Berliants assigned to Webb their rights to sue both their insurer and their insurance agent and her employers. Webb then sued Gittlen, G&G, and CDS, alleging negligence and breach of fiduciary duty. The trial court dismissed these claims, citing *Premium Cigars International Ltd. v. Farmer-Butler-Leavitt Insurance Agency*, which held that claims against an insurance agent for professional negligence are not assignable. 208 Ariz. 557, 96 P.3d 555 (App. 2004).[1]

¶ 5        The court of appeals affirmed in a memorandum decision that also relied upon *Premium Cigars*. We granted review to consider whether insureds may assign claims against their insurance agent. This Court has jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") § 12-120.24 (2003), and Arizona Rule of Civil Appellate Procedure 23(c)(3).

## II.

¶ 6        Arizona case law generally allows the assignment of unliquidated legal claims except those involving personal injury. This distinction reflects the evolution of the common

---

[1] Webb also sued the insurance company. Those claims are not at issue here.

law, which once held that "choses in action" could not be assigned, except to the crown. *Welch v. Mandeville*, 14 U.S. (1 Wheat.) 233, 237 n.a (1816). A legal claim is one type of "chose in action," but the concept also encompasses "debts of all kinds" and "rights to recover ownership or possession of real or personal property." Restatement (Second) of Contracts § 316 cmt. a (1981); *see also* W.S. Holdsworth, *The History of the Treatment of Choses in Action by the Common Law*, 33 Harv. L. Rev. 997 (1920) (tracing the term's evolution).

¶ 7     The broad prohibition on assignment exemplified the common law view that litigation was vexatious or otherwise socially undesirable. Max Radin, *Maintenance by Champerty*, 24 Cal. L. Rev. 48, 57-58 (1935). Illustrative is Lord Coke's statement:

> And first was observed the great wisdom and policy of the sages and founders of our law, who have provided that no possibility, right, title, nor thing in action, shall be granted or assigned to strangers, for that would be the occasion of multiplying of contentions and suits, of great oppression of the people.

*Lampet's Case*, (1613) 77 Eng. Rep. 994, 997 (K.B.).

¶ 8     As courts became more accessible and litigation a more accepted means for resolving disputes, the prohibition on assignment gradually became the exception rather than the rule. By the end of the 17th century, the English equity courts permitted assignees to recover debts. The common law courts

4

later followed suit, although they sometimes required the action to be filed in the name of the assignor for the benefit of the assignee. *Welch,* 14 U.S. at 237 n.a; Walter Wheeler Cook, *The Alienability of Choses in Action*, 29 Harv. L. Rev. 816, 821-22 (1916). American courts have long allowed the assignment of various choses in action, including many unliquidated legal claims. *See Welch*, 14 U.S. at 236-37 (upholding assignment and denying preclusive effect to a collusive judgment reached by assignor and debtor); *Deatsch v. Fairfield*, 27 Ariz. 387, 397-98, 233 P. 887, 891 (1925) (allowing assignment of breach of contract claim); *Rice v. Stone*, 83 Mass. (1 Allen) 566, 568 (1861) (noting that property claims and property tort claims could be assigned).

¶ 9     One class of unliquidated claims was excluded from the emerging rule of assignability: personal injury claims. Restatement (First) of Contracts § 547 (1932). Since Roman times, such claims were considered "personal" to the claimant and could not be asserted by others. Holdsworth, *supra* ¶ 6, at 1002-03, 1022-24. Consistent with this perspective, absent a statute allowing for survival, a deceased claimant's personal injury claim could not be asserted by heirs or an estate. *See McClure v. Johnson*, 50 Ariz. 76, 81, 69 P.2d 573, 575 (1937). Many courts concluded that whether a claim would survive the claimant's death should also determine whether it could be

5

assigned during the claimant's life and applied this test to both personal injury and other claims. *See, e.g., Comegys v. Vasse*, 26 U.S. (1 Pet.) 193, 213 (1828) (dicta noting that "mere personal torts, which die with the party, and do not survive to his personal representatives, are not capable of passing by assignment."); *United Verde Extension Mining Co. v. Ralston*, 37 Ariz. 554, 559-60, 296 P. 262, 264 (1931) (holding that claims for property damage would survive and thus were assignable).

¶ **10**      This "survivability" test did not itself survive in Arizona after 1955, when the legislature enacted a statute providing for the survival of most causes of action, including personal injury claims. *See Harleysville Mut. Ins. Co. v. Lea*, 2 Ariz. App. 538, 540-41, 410 P.2d 495, 497-98 (1966) (quoting A.R.S. § 14-477 (1955)).[2] Although this statute undermined one rationale for refusing to allow the assignment of personal injury claims, courts did not abolish the rule. Instead, they resurrected the common law public policy rationale – fear of vexatious litigation.  In *Harleysville*, the first decision to embrace this approach, the court of appeals concluded that allowing assignment of personal injury claims would be "fraught with possibilities" and noted that many early writers "objected

---

[2] Under the modern survivability statute, the only claims that do not survive are those for damages for breach of promise to marry, seduction, libel, slander, maintenance, alimony, loss of consortium, and invasion of privacy.  A.R.S. § 14-3110 (2005).

to ... assignability because they felt that unscrupulous people would purchase causes of action and thereby traffic in law suits for pain and suffering." *Harleysville*, 2 Ariz. App. at 541-42, 410 P.2d at 498-99.

¶ **11**     This Court subsequently endorsed *Harleysville* and expressly relied on public policy considerations in reaffirming the rule against assignment of personal injury claims. *State Farm Fire & Cas. Co. v. Knapp,* 107 Ariz. 184, 185, 484 P.2d 180, 181 (1971).   Both *Harleysville* and *Knapp*, however, noted that the legislature could specify whether certain claims are assignable. *Id.; Harleysville*, 2 Ariz. App. at 542, 410 P.2d at 499; *see also K.W. Dart Truck Co. v. Noble*, 116 Ariz. 9, 11, 567 P.2d 325, 327 (1977) (holding that the legislature could statutorily assign an injured worker's claim to his employer's insurer in certain circumstances).

¶ **12**     Public policy considerations have also guided courts in determining the assignability of claims not involving personal injury.   For example, the court of appeals has held that legal malpractice claims cannot be assigned, although the principal policy consideration offered has been deference to the attorney-client relationship, not fears about trafficking in lawsuits. *See Botma v. Huser*, 202 Ariz. 14, 17 ¶ 11, 39 P.3d 538, 541 (App. 2002) (citing *Schroeder v. Hudgins*, 142 Ariz. 395, 399, 690 P.2d 114, 118 (App. 1984), *abrogation on other*

*grounds recognized by Franko v. Mitchell*, 158 Ariz. 391, 399 n.1, 762 P.2d 1345, 1353 n.1 (App. 1988)).

¶ **13** The current principles under Arizona law for determining if an unliquidated claim may be assigned can be summarized as follows: (1) claims generally are assignable except those involving personal injury; (2) the legislature may specify whether particular claims are assignable; and (3) absent legislative direction, public policy considerations should guide courts in determining whether to depart from the general rule. *Cf.* Restatement (Second) of Contracts § 178 (1981) (stating that contracts are unenforceable where legislation so provides or where public policy clearly outweighs contractual terms).[3]

**III.**

¶ **14** Against this background, Gittlen argues that claims against insurance agents for professional negligence cannot be assigned because (1) claims against lawyers for legal

---

[3] Despite the common law prohibition on assigning personal injury claims, the law allows a claimholder to release a claim as part of a settlement and a tortfeasor to purchase an insurer's agreement to defend prospective claims. Although neither of these scenarios involves assertion of a claim by a third-party assignee, they can be regarded as variations of an "assignment" of rights to assert or defend a personal injury claim. *See* Michael Abramowicz, *On the Alienability of Legal Claims*, 114 Yale L.J. 697, 710 (2005). Some commentators advocate allowing assignment of all tort claims. *See* Isaac Marcushamer, Note, *Selling Your Torts: Creating a Market for Tort Claims and Liability*, 33 Hofstra L. Rev. 1543 (2005); Patrick T. Morgan, Note, *Unbundling Our Tort Rights: Assignability for Personal Injury and Wrongful Death Claims: Lingel v. Olbin*, 66 Mo. L. Rev. 683 (2001).

8

malpractice are not assignable; (2) the court of appeals in *Premium Cigars* correctly extended this rule to insurance agents, as their relationship with clients is analogous to the attorney-client relationship; and (3) although the legislature has not addressed the assignment of claims against insurance agents, allowing such assignment would violate public policy.

**A.**

¶ 15    In contending that legal malpractice claims may not be assigned, Gittlen presumes this Court has embraced such a rule. Although the court of appeals has done so, this Court has not yet decided this issue. Some, but not all, states prohibit the assignment of such claims. *Compare Greene v. Leasing Assocs., Inc.*, 935 So.2d 21, 24 (Fla. Ct. App. 2006); *Joos v. Drillock*, 338 N.W.2d 736, 739 (Mich. Ct. App. 1983); *Godley v. Wank & Wank, Inc.*, 133 Cal. Rptr. 83, 87 (App. 1976), *with N.H. Ins. Co. v. McCann*, 707 N.E.2d 332, 336-37 (Mass. 1999) (permitting assignment). We need not decide today whether legal malpractice claims are assignable, but assume for analytical purposes that they are not.

**B.**

¶ 16    Gittlen argues that professional negligence claims against insurance agents are sufficiently analogous to legal malpractice claims to justify extending the prohibition on assignment. We disagree.

9

**1.**

¶ **17**      The cases prohibiting assignment of legal malpractice claims do so because of the "uniquely personal" relationship between attorney and client, which gives rise to a "fiduciary relation of the very highest character." *Botma*, 202 Ariz. at 17 ¶ 11, 39 P.3d at 541 (quoting *Schroeder*, 142 Ariz. at 399, 690 P.2d at 118).      Therefore, "considerations of public policy require that actions arising out of [the] relationship not be relegated to the market place and converted to a commodity to be exploited and transferred to economic bidders." *Id.*      Rather, the cases conclude that malpractice claims should be asserted only by the wronged client to whom the attorney owes fiduciary duties. *Schroeder*, 142 Ariz. at 399, 690 P.2d at 118.

¶ **18**      In *Premium Cigars*, the court of appeals extended this rationale to professional negligence claims against insurance agents.   It held that such claims may not be assigned because the relationship of insurance agent and client is similar to that of attorney and client. *Premium Cigars*, 208 Ariz. at 566 ¶¶ 25-26, 96 P.3d at 564.   An insurance transaction, the court said, "is not simply a commercial transaction but a transaction personal in nature for the benefit of the client." *Id.* at ¶ 24. Furthermore, like attorneys, agents owe a "duty to the insured to exercise reasonable care, skill and diligence" in carrying out the duty to procure insurance. *Id.* at 566 ¶ 22, 96 P.3d at

564 (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984) (holding that such a duty exists)). Like the courts in the legal malpractice cases, the court in *Premium Cigars* expressed concern that negligence claims against insurance agents could become "bargaining chips" in settlement negotiations. *Id.* at 566 ¶ 26, 96 P.3d at 564.

**2.**

¶ **19**    We reject the *Premium Cigars* rationale. The relationship between an insurance agent and client, while certainly important, differs from that between an attorney and client in several critical respects.

¶ **20**    Attorneys are fiduciaries with duties of loyalty, care, and obedience, whose relationship with the client must be one of "utmost trust." *In re Piatt*, 191 Ariz. 24, 26, 951 P.2d 889, 891 (1997). By contrast, insurance agents generally are not fiduciaries, but instead owe only a duty of "reasonable care, skill, and diligence" in dealing with clients. *Darner*, 140 Ariz. at 397, 682 P.2d at 402; *see also Sw. Auto Painting & Body Repair, Inc. v. Binsfield*, 183 Ariz. 444, 448, 904 P.2d 1268, 1272 (App. 1995) (holding that it was a question of breach, not duty, whether an agent's failure to advise a client about additional insurance gave rise to liability). Furthermore, duties of reasonable care similar to insurance agents' arise in

11

many other contexts that do not give rise to non-assignability, such as auditor-client, and even in some cases that give rise to fiduciary relationships, such as trustee-beneficiary. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 17, 945 P.2d 317, 328 (App. 1996) (auditors); *Forest Guardians v. Wells*, 201 Ariz. 255, 260 ¶ 13, 34 P.3d 364, 369 (2001) (trustees).

¶ **21**    Similarly, although clients share personal information with both their insurance agents and attorneys, they typically share much less with their agents. While clients often inform their agents about their medical history, financial information, prior claim history, and personal habits, they provide their attorneys more extensive or sensitive information about their private and public conduct, including activities that may expose them to civil or criminal liability.

¶ **22**    Furthermore, attorney-client confidentiality protects broader interests than does insurance agent-client confidentiality. It protects the public interest in accessible legal advice by allowing people to consult their attorneys without fear of retribution. It also ensures that clients are effectively represented, which in criminal cases is essential to defendants' constitutional right to assistance of counsel. Ariz. R. Sup. Ct. 42, ER 1.6 cmt. 2; *cf. McClure v. Thompson*, 323 F.3d 1233, 1242-47 (9th Cir. 2003) (evaluating whether disclosure of client confidences constituted ineffective

12

assistance of counsel). By contrast, insurance agent-client confidentiality appears to protect only the client's privacy, an interest that, while important, has fewer societal ramifications than do the interests protected by the attorney-client relationship.

¶ 23    Once attorneys receive information, they are also bound by stricter confidentiality duties than are insurance agents.    Attorneys may disclose information only to prevent client crimes, Ariz. R. Sup. Ct. 42, ER 1.6(b), (d)(1), or in a few other limited circumstances, *id.* at (d)(3)-(4) (also allowing disclosure to secure legal advice about compliance with the rules and to defend against suits brought by the client). Insurance agents, by contrast, are statutorily allowed to disclose client information in seventeen different circumstances, including when an affiliate seeks the information for marketing purposes. A.R.S. § 20-2113 (2002 & Supp. 2007) (also allowing disclosure connected with proposed sales of the insurance institution or requests for verification of benefits from hospitals or doctors).

¶ 24    Considered together, these distinctions demonstrate that the relationship between insurance agents and their clients, while perhaps personal, is not "uniquely personal" in a sense comparable to an attorney-client relationship.    The

13

differences are substantial and the similarities do not justify holding that claims against agents cannot be assigned.

## C.

¶ 25    Gittlen also advances four public policy reasons for prohibiting the assignment of professional negligence claims against insurance agents.

### 1.

¶ 26    Gittlen first suggests that allowing assignment would undermine the personal relationship between agent and client by allowing professional negligence claims to become a "bargaining chip" that may be "commercializ[ed]."

¶ 27    This argument is unpersuasive.  Although the agent-client relationship has personal dimensions, it arises from a commercial transaction – the purchase of insurance.  It is therefore odd to suggest that it should not be commercialized. At any rate, to the extent that the relationship contains personal elements, they exist for the client's benefit. Clients are best positioned and should be empowered to decide whether to value that relationship above the benefits they could obtain from assigning a professional negligence claim.

### 2.

¶ 28    Gittlen also contends that allowing assignment conflicts with this Court's decision in *Napier v. Bertram*, which held that a taxicab company's insurance agent did not owe a

passenger the duty to secure uninsured motorist insurance for the company. 191 Ariz. 238, 244 ¶¶ 20-21, 954 P.2d 1389, 1395 (1998). She argues that because *Napier* holds that insurance agents owe no duties to non-clients, it would be inconsistent to allow an assignee to sue an insurance agent. To do so, she contends, would improperly recognize that people who are not parties to an insurance contract may still benefit from the insurance agent-client relationship.

¶ 29    This argument misconstrues the scope of *Napier* and the nature of a claim asserted by an assignee. *Napier* holds that agents generally owe duties to their clients only, but it does not address whether claims for a breach of these duties may be assigned. Assignees do not seek to expand insurance agents' duties beyond those owed to the client. Instead, they merely seek to assert *the client's* claim. Allowing them to do so does not improperly increase the beneficiaries of an insurance agent-client relationship, because even though the insurance agent's duties do not extend beyond the client, *Napier* recognizes that such duties "are discharged for the benefit of the non-client." 191 Ariz. at 243 ¶ 19, 954 P.2d at 1394.

### 3.

¶ 30    Gittlen and her amici next argue that allowing assignment of professional negligence claims will result in "collusive" stipulated judgments that will bind insurance agents

15

who had no chance to contest them.  This argument rests on a faulty premise.  Such judgments would not bind the agent.

¶ 31       This Court has recognized that, in some circumstances, an insurer may be bound by a stipulated judgment entered pursuant to a settlement between an insured and a plaintiff. This typically occurs after the insurer has either reserved its rights to contest coverage or declined to defend or indemnify the insured.  *See United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 120, 741 P.2d 246, 253 (1987).  Under such settlements, generally referred to as *Morris* or *Damron* agreements, the insured admits liability and assigns to the plaintiff the insured's rights against the liability insurer in exchange for the plaintiff's promise not to execute the judgment against the insured.  *See Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 7 ¶ 1 n.1, 106 P.3d 1020, 1022 n.1 (2005) (discussing differences between *Morris* and *Damron* agreements). If the insurer is ultimately found to be required to afford coverage or to have breached its duties, the insurer may be barred from disputing the insured's liability as specified in the stipulated judgment. *See Morris*, 154 Ariz. at 120, 741 P.2d at 253.

¶ 32       The rule that a stipulated judgment may bind the insurer arises from the insurer's contractual obligations to defend and indemnify its insured.  *Id.*   When the insurer breaches these obligations or reserves the right to deny

16

coverage, insureds are allowed to protect themselves from "the sharp thrust of personal liability," *id.* at 118, 741 P.2d at 251, by entering into *Morris* or *Damron* agreements. Such agreements would offer no benefit to the plaintiff if they could not conclusively determine the settling insured's liability. *Id.* at 120, 741 P.2d at 253. At the same time, they would pose a danger if the insurer could be bound by inflated settlements. Balancing these concerns, this Court held that the insurer may be bound by the insured's agreement only if the insurer has declined an opportunity to defend and the insured establishes that the settlement was reasonable and prudent. *Id.*

¶ 33 In contrast, an insurance agent generally has no contractual duty to defend and indemnify the client. Our prior holdings that an insurer may be bound in certain circumstances by a judgment entered against the insured arose out of, and are limited to, the insurer-insured relationship. Absent such a relationship, we do not perceive, and Gittlen has not suggested, any basis for concluding that insurance agents would be bound by stipulated judgments to which they were not parties. Indeed, principles of issue preclusion suggest the opposite conclusion. Under those principles, the insurance agent would be barred from re-litigating an issue only if, among other things, the agent or her privy was a party in a prior action in which the issue was actually litigated. *See Maricopa-Stanfield Irrigation &*

*Drainage Dist. v. Robertson*, 211 Ariz. 485, 491-92 ¶ 39, 123 P.3d 1122, 1128-29 (2005).

**4.**

¶ **34**     Finally, Gittlen argues that allowing assignment would flood courts with unwarranted litigation. We think this unlikely. Although allowing assignment may lead to an increase in the number of professional negligence claims that are actually pursued, this is not necessarily a bad result. Insofar as the claims are meritorious, they will serve the goals of affording compensation for the clients who are victims of professional negligence (who benefit from the consideration they receive for assigning their claims), increasing the likelihood that the victims of the underlying tort are compensated (insofar as they can recover on the assigned claim against the agent), and deterring negligence on the part of insurance agents. *See* Michael Abramowicz, *On the Alienability of Legal Claims*, 114 Yale L.J. 697, 741 (2005). To the extent that allowing assignment might foster non-meritorious claims, we believe they will be better deterred by specifically targeted rules, such as Arizona Rule of Civil Procedure 11, rather than an absolute bar on assignment. *Cf. Guerrero*, 210 Ariz. at 15 ¶ 35, 106 P.3d at 1030 (discussing deterrents to the filing of frivolous claims).

¶ 35    In short, the policy concerns identified by Gittlen do not support a rule generally barring the assignment of professional negligence claims against insurance agents.

**IV.**

¶ 36    Because we hold that the Berliants may assign to Webb their claims for professional negligence, we reverse the decision of the court of appeals and the judgment of the trial court and remand this case for further proceedings.


_____
W. Scott Bales, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice