195 P.3d 184

**HIGHLAND VILLAGE PARTNERS, L.L.C., a Delaware limited liability company, Plaintiff/Appellant,**

v.

**BRADBURY & STAMM CONSTRUCTION COMPANY, INC., a New Mexico corporation, Defendant/Appellee.**

No. 1 CA–CV 07–0194.

Court of Appeals of Arizona, Division 1, Department C.

April 8, 2008.

Review Denied Sept. 23, 2008.

Hoopes & Adams, PLC by John R. Hoopes, Patricia A. Alexander, Chandler, Attorney for Plaintiff/Appellant.

Koeller, Nebeker, Carlson & Haluck, LLP by William A. Nebeker, Rosary A. Hernandez, Judith A. Downs, Christopher D. Graham, Phoenix, Attorney for Defendant/Appellee.

## OPINION

TIMMER, Presiding Judge.

¶ 1 In this appeal by plaintiff-appellant Highland Village Partners, L.L.C. ("Highland"), we are asked to decide whether a subsequent purchaser of commercial property can sue for breach of the implied warranty of workmanship and habitability pursuant to an express assignment of that warranty by the original owner. To resolve this issue, we consider whether our decision in *Hayden Business Center Condominiums Ass'n v. Pegasus Development Corp.*, 209 Ariz. 511, 105 P.3d 157 (App.2005), or other authority, precludes such assignments. For the reasons that follow, we decide that owners can effectively make such assignments. Because the

trial court reached the contrary conclusion, we reverse its entry of summary judgment and remand for additional proceedings.

## BACKGROUND[1]

¶ 2 In June 1996, College Partners Limited Partnership ("College Partners") retained defendant-appellee Bradbury & Stamm Construction Company, Inc. ("Bradbury Stamm") to act as general contractor for construction of the Lumberjack Hill Apartments (the "Apartments") in Flagstaff. The Apartments comprised of eighteen separate apartment buildings, a clubhouse, and other improvements. The project was substantially completed on September 30, 1997.

¶ 3 On November 18, 2004, College Partners executed an agreement to sell the Apartments to Evergreen Office Partners, L.P. ("Evergreen"), with a closing date on or before December 15, 2004. Highland was substituted as the buyer prior to the close of escrow. Evergreen is the managing member of Highland.

¶ 4 By agreement effective December 15, 2004, College Partners expressly assigned to Highland the former party's interest in "all presently effective warranties or guaranties in College Partners' possession from any contractors, subcontractors, suppliers, servicemen or materialmen in connection with ... any construction, renovation, repairs or alterations of the improvements or any tenant improvements" as well as "all contracts with general contractors, subcontractors, and/or specialty contractors for the improvements which are in the possession and/or under the control of Seller."

¶ 5 In April 2005, Highland filed suit against Bradbury Stamm for breach of the implied warranty of workmanship and habitability, alleging various defects, including improper flashing and improper installation of siding. After filing an answer denying liability, Bradbury Stamm filed a motion for summary judgment, arguing that Highland could not maintain its claim as it lacked privity of contract with Bradbury Stamm and, there-

---

1. We view the facts and the inferences to be drawn from those facts in the light most favorable to Highland as the party against whom

summary judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

fore, pursuant to *Hayden*, any claim for breach of the implied warranty belonged exclusively to College Partners. Highland responded that College Partners' express assignment of warranties removed this case from the holding in *Hayden*.

¶6 The trial court granted Bradbury Stamm's motion, ruling that *Hayden* disallowed extension of the implied warranty of good workmanship and habitability to subsequent purchasers of commercial property. Consequently, the court determined, because Highland did not have privity of contract with Bradbury Stamm, Highland lacked standing to sue. After the court awarded Bradbury Stamm its attorneys' fees and entering final judgment, this timely appeal followed.

## STANDARD OF REVIEW

¶7 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing the grant of summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶4, 7 P.3d 136, 139 (App.2000).

## DISCUSSION

### I.

¶8 An implied-warranty-of-good-workmanship claim is one grounded in contract and therefore, with exception, can only be asserted by a party to the contract. *Hayden*, 209 Ariz. at 512–13, ¶8, 105 P.3d at 158–59. In *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 244–45, 678 P.2d 427, 429–30 (1984), the supreme court established one exception to the privity requirement, holding that the implied warranty of good workmanship and habitability owed by a homebuilder-vendor to its purchaser can be enforced by a subsequent purchaser who was not in privity of contract with the homebuilder-vendor. The court reasoned that public policy considerations warranted the exception to the privity requirement in light of the vast differ-

ences in construction knowledge possessed by a large-scale homebuilder-vendor and homebuyers, a homebuilder's expectation that homes frequently change hands in our mobile society, and the lack of meaningful difference to any party whether defects are suffered by original or subsequent homeowners. *Id.* at 245, 678 P.2d at 430; *see also Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, 516 Ariz. Adv. Rep. 26, 27, ¶10, 218 Ariz. 499, 189 P.3d 426 (App. 2007) (holding that *Richards* exception to privity requirement only applies when defendant is both homebuilder and vendor to residential end-user).

¶9 In *Hayden*, this court considered whether the *Richards* exception extended to commercial property transactions. 209 Ariz. at 513–14, ¶14, 105 P.3d at 159–60. In that case, the original owner of a commercial building sold condominium interests to various persons, who subsequently claimed construction defects. *Id.* at 512, ¶¶2–3, 105 P.3d at 158. These buyers assigned their claims to a building association, which sued the builder for breach of the implied warranty of workmanship and habitability. *Id.* at ¶3. The trial court granted summary judgment for the builder, ruling that no authority extended the implied warranty to claims by subsequent purchasers of commercial property. *Id.* at ¶4. This court affirmed, concluding in relevant part that the policy considerations underlying the decision in *Richards* did not apply as parties to a sale of commercial property generally have comparable sophistication levels. *Id.* at 513–14, ¶14, 105 P.3d at 159–60. Thus, the court decided that the privity requirement applied without exception in the commercial property context, and the building association therefore lacked standing to sue. *Id.* at 515, ¶24, 105 P.3d at 161.

¶10 Highland argues the trial court erred by applying *Hayden* to defeat its claim as, unlike the building association in *Hayden*, Highland had been expressly assigned the *original* owner's warranty rights. Bradbury Stamm responds that regardless of the express assignment, *Hayden* means that an implied warranty of workmanship and habitability can never be extended to a subse-

**150**

quent purchaser of commercial property. We agree with Highland that *Hayden* does not preclude a suit by a subsequent purchaser of commercial property for breach of the implied warranty pursuant to an express assignment of the original owner's warranty rights; this issue was not before the *Hayden* court. Consequently, we now consider the issue.

¶ 11 We begin with a review of assignment principles. As the supreme court recently reiterated, our courts "have long allowed the assignment of various choses in action." *Webb v. Gittlen,* 217 Ariz. 363, 364–65, ¶¶ 8, 14–16, 174 P.3d 275, 276–78 (2008) (addressing assignability of existing professional negligence claim against insurance agent); 6A C.J.S. *Assignments* § 32 (2008) ("Generally, rights and duties under a contract are freely assignable."). A party can assign its contractual rights to a third party unless:

>   (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or

>   (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

>   (c) assignment is validly precluded by contract.

Restatement (Second) of Contracts ("Restatement") § 317(2) (1981); *see Powers v. Taser Int'l, Inc.,* 217 Ariz. 398, 403, ¶ 19, 174 P.3d 777, 782 (App.2007) (acknowledging Arizona generally follows Restatement in absence of contrary authority); *cf.* Ariz.Rev. Stat. ("A.R.S.") § 47–2210(B) (2005) (providing buyer and seller of goods can assign contract rights absent agreement to contrary, material change of duty or burden on other party, or material impairment of other party obtaining return performance). Assuming the assignment is valid, the assignee acquires the rights previously held by the assignor. *Martinez v. Bucyrus–Erie Co.,* 113 Ariz. 119, 120, 547 P.2d 473, 474 (1976).

¶ 12 The implied warranty of workmanship and habitability is imposed by law in construction contracts. *Richards,* 139 Ariz. at 243–44, 678 P.2d at 428–29; *Hayden,* 209 Ariz. at 512–13, ¶ 8, 105 P.3d at 158–59. Implied terms, however, are as much a part of a contract as are express terms. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 28 (2002). Consequently, we discern no reason why a party's rights under an implied warranty of workmanship and habitability cannot be expressly assigned in a commercial property context. Indeed, such a conclusion comports with Arizona's view that parties are free to contract. *See 1800 Ocotillo, LLC v. WLB Group, Inc.,* 217 Ariz. 465, 473, ¶ 21, 176 P.3d 33, 41 (App.2008) ("[A]bsent an ascertainable public policy to the contrary, parties in Arizona are generally free to contract as they wish."). It is also consistent with the principle that unliquidated *claims* are generally assignable. *Webb,* 217 Ariz. at 366, ¶ 13, 174 P.3d at 278. For this reason, unless one of the above-described exceptions applies, *see supra* ¶ 11, although the implied warranty of workmanship and habitability does not automatically run to a subsequent purchaser of commercial property, the original purchaser can expressly assign these warranty rights. We now consider whether any such exceptions apply in this case as a matter of law based on the record before us.

## II.

¶ 13 Bradbury Stamm argues that public policy, as set forth in *Hayden,* prohibits assignment of the implied warranty of workmanship and habitability. We disagree. The *Hayden* court declined to extend the *Richards* exception to the commercial property context because the public policy concerns present in residential homebuilding did not exist. 209 Ariz. at 513, ¶ 14, 105 P.3d at 159. It does not logically follow that the lack of policy reasons to extend the *Richards* exception to the privity requirement precludes an express assignment of the implied warranty, which places the assignee in privity with the builder. *See K.B. v. State Farm Fire & Cas. Co.,* 189 Ariz. 263, 267, 941 P.2d

1288, 1292 (App.1997) ("An assignee steps into the shoes of her assignor."); *Jefferson Loan Co. v. Session*, 397 N.J.Super. 520, 938 A.2d 169, 179 (2008) (concluding assignee of contractual rights is thereafter in privity with other party to contract).

¶ 14 Bradbury Stamm next contends, and the trial court apparently agreed, that public policy prohibits assignment of implied warranty rights as original owners should be encouraged to bring warranty claims quickly to allow the builder to correct defects. According to the trial court, "[i]f the owner knows he can sit on his rights, and even sell the property and let the next owner exercise their rights under an implied warranty theory, there is no incentive to timely notify a builder of problems and in turn no early opportunity to cure possible defects." We disagree.

¶ 15 First, the Arizona legislature has established the public policy for the time by which owners must exercise their rights under an implied warranty. *Florez v. Sargeant*, 185 Ariz. 521, 528–29, 917 P.2d 250, 257–58 (1996) (noting legislature enacts statutes of limitations to "protect against the nightmare of stale claims" and that "the weighing, balancing, and policy making" that go into establishing the limitations periods is a legislative task). Section 12–552, A.R.S. (2003), provides that any claim for defects must be filed no later than eight years after substantial completion of an improvement on real property. Consequently, as long as an assignee brings a claim within the limitation period, public policy is not violated.

¶ 16 Second, a builder is protected against any prejudicial delay in bringing a claim within the statute of limitations by the doctrine of laches. Under that doctrine, the court will bar a claim if the delay in asserting it is unreasonable and prejudices the opposing party. *Sotomayor v. Burns*, 199 Ariz. 81, 83, ¶ 6, 13 P.3d 1198, 1200 (2000). Whether an assignee is barred by laches for any fail-

ure to timely notify a builder of a defect must be decided on a case-by-case basis. *See K.B.*, 189 Ariz. at 267, 941 P.2d at 1292 (noting that assignee's rights are derivative of assignor's and thus assignee is subject to defenses that could have been asserted against assignor).

¶ 17 Third, and finally, a builder may protect itself from an owner who may choose to sit on its warranty rights in anticipation of a sale by including a non-assignability clause in the parties' contract. Restatement § 317(2). Permitting the parties to decide whether to allow assignment of contract rights best comports with Arizona's public policy that parties are free to contract. *Ocotillo*, 217 Ariz. at 473, ¶ 21, 176 P.3d at 41.[2]

¶ 18 Bradbury Stamm alternatively argues that even assuming College Partners was permitted to assign its warranty rights, the purported assignment was ineffective. Specifically, Bradbury Stamm contends that because the alleged breach of the implied warranty arose after Highland acquired the Apartments in an "as is" condition, College Partners did not suffer damage and had no claim to assign. Bradbury Stamm overlooks the fact that College Partners assigned to Highland its contract rights rather than an existing claim. "[The] assignment of a contract right to become due in [the] future constitutes a present transfer and is enforceable at law." 6A C.J.S. *Assignments* § 46. Therefore, to the extent College Partners possessed rights under the implied warranty of workmanship and habitability prior to the assignment, Highland possesses those rights. *See K.B.*, 189 Ariz. at 267, 941 P.2d at 1292.

¶ 19 In summary, based on the record before us, College Partners was not precluded from assigning its rights under the implied warranty of workmanship and habitability to Highland. For this reason, we reverse the entry of summary judgment and the concurrent award of attorneys' fees to

---

2. Bradbury Stamm included as an appendix to its answering brief on appeal a copy of a non-assignability clause included in a standard contract of the American Institute of Architects, which was purportedly incorporated into the contract between Bradbury Stamm and College Partners. Because this document is not part of the record on appeal, and the applicability and scope of this clause was not at issue in the motion for summary judgment, we do not decide the impact of this clause.

Bradbury Stamm and remand for additional proceedings.

## ATTORNEYS' FEES ON APPEAL

¶ 20 Both parties have requested an award of attorneys' fees pursuant to A.R.S. § 12–341.01 (2003), which allows a court to award fees to the successful party in a contested action arising out of contract. Because neither party has yet prevailed, we decline to award fees on appeal. The trial court may award attorneys' fees expended on appeal to the party which ultimately prevails in this case.

## CONCLUSION

¶ 21 For the foregoing reasons, we decide that *Hayden* did not preclude College Partners from effectively assigning its rights under the implied warranty of workmanship and habitability to Highland. Because the record does not otherwise permit us to conclude as a matter of law that the assignment was invalid, we reverse the trial court's grant of summary judgment and concurrent award of attorneys' fees and remand for further proceedings.

CONCURRING: PATRICIA K. NORRIS and MICHAEL J. BROWN, Judges.

