IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

POINTE 16 COMMUNITY ASSOCIATION,
*Plaintiff/Appellant*,

*v.*

GTIS-HOV POINTE 16, LLC, ET AL.,
*Defendants/Appellees*.

No. CV-24-0182-PR
**Filed September 4, 2025**

Appeal from the Superior Court in Maricopa County
The Honorable Jennifer C. Ryan-Touhill, Judge
No. CV2022-009451
**REVERSED IN PART AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 23-0747
Filed July 9, 2024
**VACATED IN PART**

COUNSEL:

Kyle A. Israel (argued), Israel & Gerity, PLLC, Phoenix, Attorneys for
Pointe 16 Community Association

Aaron M. Finter (argued), Schern Richardson Finter, PLC, Mesa, Attorneys
for GTIS-HOV Pointe 16, LLC and K. Hovnanian Phoenix Division Inc.

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BOLICK,[1] BEENE, MONTGOMERY, and CRUZ joined.

---

JUSTICE KING, Opinion of the Court:

**¶1**        A purchase agreement between individual homebuyers and the developer of a community provides that "this Agreement and the rights of Buyer hereunder may not be assigned or transferred by Buyer" without the developer's written consent.  We now consider whether this anti-assignment clause precludes the homeowners from assigning their accrued claims for breach of the implied warranty of workmanship and habitability to the community's homeowners' association.  We conclude it does not.

## BACKGROUND

**¶2**        Pointe 16 Townhomes ("Pointe 16") is a residential community comprised of sixty-seven residences.  GTIS-HOV Pointe 16, LLC ("GTIS") developed and sold the residences to individual homebuyers.  K. Hovnanian Arizona Operations, LLC f/k/a K. Hovnanian Great Western Building Company, LLC ("K. Hovnanian") was the general contractor that built Pointe 16.

**¶3**        With the sale of each Pointe 16 residence, the homebuyer and GTIS executed a "Purchase Agreement and Escrow Instructions" ("Agreement").  K. Hovnanian was not a party to the Agreement.  The Agreement contains the following anti-assignment clause:

> **B. Successors and Assigns**. *In view of the credit qualifications, processing and other personal matters considered hereunder, this Agreement and the rights of Buyer hereunder may not be assigned or transferred by Buyer* voluntarily, involuntarily, or by operation of law without first obtaining Seller's written

---

[1] Justice Bolick joins in the Opinion except for paragraph 29.

consent, which may be withheld in Seller's sole and absolute discretion. If Buyer attempts to assign Buyer's interest under this Agreement before the Close of Escrow or enters into another escrow for the concurrent resale of the Property, Buyer is in default and Seller shall have the right to terminate this Agreement and retain the Earnest Money Deposit in accordance with Section 7 above, in addition to all rights and remedies available to Seller set forth in this Agreement. Escrow Holder is instructed not to assist or participate in any way in the consummation of any so-called "double-escrows" initiated by Buyer. This Agreement and the rights, duties and obligations of the Parties shall be binding upon and shall inure to the benefit of the representatives, successors and assigns of Seller and, subject to the preceding sentences, to the heirs, executors, administrators, representatives, successors and assigns of Buyer.

(Emphasis added.)

¶4        During the development phase of Pointe 16, GTIS created the Pointe 16 Community Association ("HOA"). GTIS conveyed ownership of the Pointe 16 common areas to the HOA via a quit claim deed. GTIS maintained complete control over the HOA until all lots were sold or GTIS relinquished control, whichever occurred earlier.

¶5        The HOA is charged with certain duties and authority prescribed by law and set forth in separate articles of incorporation, bylaws, and a declaration of covenants, conditions, restrictions, and easements ("Declaration"). According to the Declaration, the HOA is required to maintain and manage the common areas. The Declaration also delegates to the HOA the authority to paint the exterior of dwelling units and repair, maintain, and replace the exterior walls, stucco, facades, roofs, and other surfaces of dwelling units.

¶6        The HOA filed this lawsuit against GTIS and K. Hovnanian (collectively "Defendants"), alleging that Pointe 16 was not constructed in a workmanlike manner and there are various defects in Pointe 16's real property and structures. The complaint asserts two causes of action: (1) a

3

dwelling action claim under A.R.S. § 12-1361, *et seq.*, and (2) a claim for breach of the implied warranty of workmanship and habitability.

**¶7**         Defendants moved for summary judgment on both claims. As to the dwelling action claim, Defendants argued § 12-1361 does not establish an independent cause of action.  On the breach of implied warranty claim, Defendants argued the HOA cannot prevail because (1) the implied warranty was created in favor of homebuyers, and (2) the HOA "is not a homeowner, does not represent the homeowners, and is not pursuing claims belonging to any homeowner."

**¶8**         A majority of the Pointe 16 homeowners then signed a "Homeowner Assignment of Certain Defect Claims to Association" (collectively "Assignments").  The HOA filed the signed Assignments with the trial court as part of its opposition to Defendants' summary judgment motion.  In the Assignments, the homeowners affirmed their understanding that the HOA was pursuing claims against Defendants for construction defects in Pointe 16, including defects in units owned by homeowners. They also declared:

> [1] I hereby assign to the [HOA] all rights to bring any and all claims that the [HOA] has to date sought to bring regarding unit defects in this matter against the Defendants, as referenced in [the HOA's] expert reports and notices of claim (the "Assigned Claims").

> [2] I understand and agree that the [HOA] shall have the sole right to pursue the Assigned Claims against Defendants and that the [HOA], in its sole discretion, shall have the authority to resolve the Assigned Claims.  I relinquish any right that I may have to pursue these claims. I agree to be bound by any decision regarding the Assigned Claims in this matter.

> [3] I further agree that the Association shall have discretion to repair any Assigned Claims based on its judgment at the conclusion of this matter.

The homeowners did not obtain GTIS's written consent for the Assignments.

**¶9**         The trial court granted summary judgment in favor of Defendants and dismissed the case in its entirety.  As relevant here, the court determined the HOA has no legal right to assert a claim for breach of the implied warranty, and the Agreement prohibits Pointe 16 homeowners from assigning their claims to the HOA.

**¶10**         The HOA appealed the trial court's grant of summary judgment in favor of Defendants on the implied warranty claim, and the court of appeals affirmed.  *See Pointe 16 Cmty. Ass'n v. GTIS-HOV Pointe 16, LLC,* No. 1 CA-CV 23-0747, 2024 WL 3341355, at *1 ¶ 1 (Ariz. App. July 9, 2024) (mem. decision).  The court reasoned that because the implied warranty is "part of the contract, 'a party's rights under an implied warranty of workmanship and habitability' may be assigned unless the assignment itself is 'validly precluded by contract.'"  *Id.* at *3 ¶ 19 (quoting *Highland Vill. Partners v. Bradbury & Stamm Constr. Co.*, 219 Ariz. 147, 150 ¶¶ 11–12 (App. 2008)).  With respect to the Agreement at issue here, the court determined: "The HOA does not suggest the non-assignment provision is invalid.  As such, the homeowners were precluded from assigning to the HOA their rights to enforce the implied warranty."  *Id.*

**¶11**         We granted review to consider whether an anti-assignment clause in a purchase agreement precludes a homeowner from assigning a breach of implied warranty claim to a homeowners' association, an issue of statewide importance.[2]   We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶12**         "[W]e review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom

---

[2]  We also granted review on a second issue—whether the anti-assignment clause precludes the homeowners from assigning to the HOA their claims against K. Hovnanian, which was not a party to the Agreement.  In light of our conclusion on the first issue, this second issue is now moot and we will not consider it.

summary judgment was entered." *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021).

## A. Review Of Assignment Principles

**¶13** "Generally, rights and duties under a contract are freely assignable." *Highland Vill. Partners*, 219 Ariz. at 150 ¶ 11 (quoting 6A C.J.S. *Assignments* § 32 (2008)). An unconditional and valid "assignment passes to the assignee all the rights, title or interest of the assignor in or to the property or property rights comprehended by the assignment." *Martinez v. Bucyrus-Erie Co.*, 113 Ariz. 119, 120 (1976). "Essentially the right acquired by the assignee is simply that previously possessed by the assignor." *Id.*; *see also Highland Vill. Partners*, 219 Ariz. at 150 ¶ 11 ("Assuming the assignment is valid, the assignee acquires the rights previously held by the assignor.").

**¶14** Although the common law at one time reflected a broad prohibition on assignment of claims, that "prohibition on assignment gradually became the exception rather than the rule." *Webb v. Gittlen*, 217 Ariz. 363, 364–66 ¶¶ 6–13 (2008). In *Webb*, this Court summarized "[t]he current principles under Arizona law for determining if an unliquidated claim may be assigned" in this manner: "(1) claims generally are assignable except those involving personal injury; (2) the legislature may specify whether particular claims are assignable; and (3) absent legislative direction, public policy considerations should guide courts in determining whether to depart from the general rule." *Id.* at 366 ¶ 13.

**¶15** Consistent with these principles, breach of contract claims generally are assignable. *See Deatsch v. Fairfield*, 27 Ariz. 387, 397–98 (1925) ("It is generally held that all claims and choses in action sounding ex contractu are assignable, including not only rights of action for breaches of contract, but also those based on negotiable and nonnegotiable instruments, and on judgments, bonds, book accounts, annuities, and similar choses in action." (citation omitted)).

**B. General Assignability Of Claims For Breach Of The Implied Warranty Of Workmanship And Habitability**

**¶16** At issue here is the assignability of a claim for breach of the implied warranty of workmanship and habitability, which is a warranty imposed by law "to protect innocent purchasers and hold builders accountable for their work." *Sirrah Enters. v. Wunderlich*, 242 Ariz. 542, 544 ¶ 8 (2017) (quoting *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 245 (1984)). With new home construction, "the builder-vendor impliedly warrants that the construction was done in a workmanlike manner and that the structure is habitable." *Lofts at Fillmore Condo. Ass'n v. Reliance Com. Constr., Inc.*, 218 Ariz. 574, 575 ¶ 5 (2008) (quoting *Columbia W. Corp. v. Vela*, 122 Ariz. 28, 33 (App. 1979)).

**¶17** "[W]e impute the implied warranty of workmanship and habitability into all contracts between builder-vendors and homebuyers as a matter of common law." *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 59 ¶ 14 (2022); *see also Sirrah Enters.*, 242 Ariz. at 546 ¶ 18 ("Although implied by law, the [w]arranty is imputed into an express contract for home construction."); *Richards*, 139 Ariz. at 244 (explaining that the implied warranty is imposed by law).

**¶18** As the implied warranty is "imputed by law into all express contracts" for home construction, it "is 'as much a part of a contract as are the express terms.'" *Sirrah Enters.*, 242 Ariz. at 546 ¶ 18 (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 490 ¶ 59 (2002)). Therefore, a "claim for breach of the implied warranty sounds in contract." *Id.* at 545 ¶ 11 (quoting *Lofts*, 218 Ariz. at 575 ¶ 5); *see also Woodward v. Chirco Const. Co.*, 141 Ariz. 514, 516 (1984) (explaining "the implied warranty . . . provides for a cause of action in contract").

**¶19** To summarize, Arizona law provides that (1) the implied warranty of workmanship and habitability is part of the contract between a homebuyer and builder, (2) a claim for breach of the implied warranty sounds in contract, and (3) breach of contract claims generally are assignable. It necessarily follows that homeowners' claims for breach of the implied warranty generally are assignable, as occurred here.

**¶20**        To be clear, this Court has held that public policy prohibits the enforcement of a contractual provision that disclaims and waives the implied warranty of workmanship and habitability. *Zambrano*, 254 Ariz. at 57 ¶ 3, 64 ¶ 36. Thus, the implied warranty cannot be contracted away. But the default rule that rights and claims generally are assignable is subject to the terms of a contract, as parties may contract away the ability to assign rights or claims. *See Highland Vill. Partners*, 219 Ariz. at 150 ¶ 11. For that reason, we now turn to whether the Agreement's anti-assignment clause prohibits the assignment of an accrued claim for damages for breach of the implied warranty.

### C. Analysis Of The Agreement's Anti-Assignment Clause

**¶21**        Just as parties may agree to an assignment, they may also agree to prohibit certain assignments. *See id.* ("A party can assign its contractual rights to a third party unless . . . assignment is validly precluded by contract." (quoting Restatement (Second) of Contracts § 317(2)(c) (Am. L. Inst. 1981))); *Aetna Cas. & Sur. Co. v. Valley Nat'l Bank of Ariz.*, 15 Ariz. App. 13, 15 (1971) (recognizing that contracts may expressly prohibit assignment). This is in line with Arizona's longstanding public policy favoring freedom of contract. *See, e.g.*, *Merrill v. Gordon*, 15 Ariz. 521, 531 (1914) ("Freedom of contract and freedom in the use and disposition of one's own are no less sacred than freedom of speech."); *1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202 ¶ 8 (2008) ("Our law generally presumes . . . that private parties are best able to determine if particular contractual terms serve their interests. Society also broadly benefits from the prospect that bargains struck between competent parties will be enforced." (internal citation omitted)).

**¶22**        In *Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601, 603 (1977), this Court explained:

> It is . . . hornbook law that in order to effect a legal assignment of any kind there must be evidence of an intent to assign or transfer the whole or part of some specific thing, debt, or chose in action, and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified.

Similarly, an anti-assignment clause in an agreement must evidence an intent to prohibit the assignment of some specific thing, debt, or chose in action, and the subject matter of what may not be assigned must be described sufficiently to make it capable of being readily identified.

¶23　　　　Here, the Agreement's anti-assignment clause begins with a prefatory statement that the clause exists "[i]n view of the credit qualifications, processing and other personal matters considered hereunder." The clause then states, "this Agreement and the rights of Buyer hereunder may not be assigned or transferred by Buyer" without GTIS's written consent. The prefatory language, which precedes the operative language, is essentially a stated purpose for the anti-assignment clause, and we interpret the anti-assignment clause consistent with that purpose. *See Terrell v. Torres*, 248 Ariz. 47, 49 ¶ 14 (2020) ("When interpreting a contract, we seek to discover and effectuate the parties' expressed intent" and "we consider a provision's meaning in the context of the entire contract.").

¶24　　　　The prefatory language—addressing "credit qualifications, processing and other personal matters considered hereunder"—makes clear that certain aspects of the Agreement are essential and were intended to be covered by the anti-assignment clause, including the identity of the homebuyer (with his or her background and creditworthiness) and that GTIS would deal only with this specific homebuyer for the specific property which is the subject of the Agreement. *See Personal*, Merriam-Webster, https://www.merriam-webster.com/dictionary/personal (last visited Sept. 2, 2025) (defining "personal" as "of, relating to, or affecting a particular person" and "of, relating to, or constituting personal property"); *see also Matter*, Merriam-Webster, https://www.merriam-webster.com/dictionary/matter (last visited Sept. 2, 2025) (defining "matter" as "a subject under consideration" and "matters" as "the events or circumstances of a particular situation"). The anti-assignment clause, therefore, evidences an intent to preclude an assignment that would change the homebuyer with whom GTIS had contracted, impair GTIS's chance of obtaining the homebuyer's full performance under the Agreement, or increase the burdens or risks imposed on GTIS by virtue of the performance obligations in the Agreement.

¶25　　　　Notably absent from the Agreement's anti-assignment clause is a reference to *claims*, which is what the Pointe 16 homeowners assigned

to the HOA. The fact the Agreement prohibits the assignment of the Agreement and the homebuyer's *rights* under the Agreement—but not the homebuyer's *claims* accruing from breach of the Agreement—is significant. An assignment of rights under a contract is different than an assignment of accrued claims for damages arising from a breach of that contract. *See, e.g.*, *Farmers Ins. Exch. v. Udall*, 245 Ariz. 19, 23 ¶ 14 (App. 2018) ("The insureds did not assign their insurance policies to EcoDry, but rather they each assigned a claim under and a right of action on the policy." (emphasis omitted)); *Aetna Cas. & Sur. Co.*, 15 Ariz. App. at 15 (explaining that insurance policies prohibiting assignment support "the right of the insurer to choose its insured so as to know its risks," but where an assignment is made after the liability-causing event, "the general rule is that the assignment is not of the policy itself, but of a claim under, or a right of action on, the policy").

¶26　　　　Other state courts have recognized the distinction between rights and claims in the assignment context. Indeed, "contract rights are distinct from causes of action which accrue from the violation of such rights. Thus, the prohibition in the contract against assignment of the contract without the consent of the other party does not bar assignment of causes of action accruing from breach of the contract." *Korte Const. Co. v. Deaconess Manor Ass'n*, 927 S.W.2d 395, 403 (Mo. Ct. App. 1996); *see also Folgers Architects, Ltd. v. Kerns*, 633 N.W.2d 114, 126–27 (Neb. 2001) ("[T]he intent of the provision against assignment of rights under a contract, which generally is to allow the parties to choose with whom they contract, is not affected by allowing an assignment of a right to collect damages for breach of contract."); *Cordis Corp. v. Sonics Int'l, Inc.*, 427 So.2d 782, 783 (Fla. Dist. Ct. App. 1983) (explaining that "while contractual provisions against assignability are generally enforceable," a provision that "forbids only the assignment of a party's 'rights' under a contract simply does not preclude the assignment of an accrued claim for damages arising from its breach"); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 993–94, 996 (Wash. 1994) (determining that a clause prohibiting assignment of "any interest in this Agreement" is "a general anti-assignment clause . . . aimed at prohibiting the assignment of a contractual performance" and "does not, absent specific language to the contrary, prohibit the assignment of a breach of contract cause of action").

**¶27**       The Arizona Legislature has also distinguished between the assignment of rights under a contract and the assignment of claims for damages arising from breach of the contract. *See* A.R.S. § 47-2210(B) (differentiating, in the uniform commercial code context, between (1) rights of seller or buyer that materially change a party's duties, increase the burden or risk imposed by the contract, or impair the chance of obtaining return performance, and (2) a right to damages for breach of the whole contract). Although § 47-2210(B) is not directly applicable here, the Arizona Legislature's distinction between rights and claims in the assignment context is noteworthy.

**¶28**       We also note the Agreement does not expressly provide a *right* to the implied warranty of workmanship and habitability. Instead, the Agreement takes the opposite approach by expressly disclaiming, excluding, and waiving the implied warranty.[3] This further supports a conclusion that the parties did not intend a claim for breach of the implied warranty to be a *right* covered by the anti-assignment clause.

**¶29**       An agreement that only prohibits the assignment of the agreement and rights under the agreement does not evidence an intent to prohibit the assignment of accrued claims for damages for breach of the agreement. *See Certified Collectors, Inc.*, 116 Ariz. at 603; *see also* Restatement § 322(2)(a) (providing that "[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, . . . does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation"). Accordingly, the Agreement's anti-assignment clause does not prohibit the assignment of accrued claims for damages for breach of the implied warranty in the Agreement.

**¶30**       In their Assignments, the homebuyers did not assign the Agreement or their rights under the Agreement. Instead, they assigned

---

[3] Such a provision is no longer enforceable. *See Zambrano*, 254 Ariz. at 64 ¶ 36 (holding "the public policy underlying the implied warranty of workmanship and habitability clearly outweighs enforcement of the disclaimer and waiver of that warranty in the purchase agreement and the PWC warranty here").

their accrued breach of implied warranty claims for damages to the HOA, an entity that independently owes duties to them under Pointe 16's governing documents. The Assignments were permissible and did not implicate, much less violate, the Agreement's anti-assignment clause.

## CONCLUSION

¶**31** We vacate paragraphs 18 and 19 of the court of appeals' memorandum decision, and the portion of paragraph 1 that addresses the assignability of a claim for breach of the implied warranty of workmanship and habitability.

¶**32** We reverse the trial court's grant of summary judgment on the claim for breach of the implied warranty of workmanship and habitability and remand for further proceedings consistent with this Opinion.